807 N.E.2d 448 (2004)
209 Ill.2d 227
282 Ill.Dec. 824
The PEOPLE of the State of Illinois, Appellee,
v.
Elton WILLIAMS, Appellant.
No. 90137.
Supreme Court of Illinois.
March 18, 2004.
*451 Charles M. Schiedel, Deputy Defender, and Kathryn Saltmarsh, Assistant Defender, Office of the State Appellate Defender, Springfield, for appellant.
James E. Ryan, Attorney General, Springfield, and Jeffrey J. Tomczak, State's Attorney, Joliet (Joel D. Bertocchi, Solicitor General, and William L. Browers and Colleen M. Griffin, Assistant Attorneys General, Chicago, of counsel), for the People.
Justice GARMAN delivered the opinion of the court:
Petitioner, Elton Williams, was convicted following a jury trial of the first degree murder of police officer Timothy Simenson and sentenced to death. This court affirmed his conviction and sentence on direct appeal. People v. Williams, 181 Ill.2d 297, 229 Ill.Dec. 898, 692 N.E.2d 1109 (1998). After his petition for a writ of certiorari to the United States Supreme Court was denied (Williams v. Illinois, 525 U.S. 882, 119 S.Ct. 192, 142 L.Ed.2d 157 (1998)), he filed a timely petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 et seq. (West 1998)). The State filed a motion to dismiss, *452 which the circuit court granted. Because petitioner was sentenced to death for the underlying convictions, his appeal lies directly to this court. 134 Ill.2d R. 651(a).
In this appeal, he argues that the circuit court erred by dismissing three of his postconviction claims: (1) that juror misconduct deprived him of a fair trial; (2) that trial counsel was ineffective for failing to present expert testimony at the aggravation/mitigation stage of the sentencing hearing that would have linked his childhood history of abuse to his adult behavior; and (3) that appellate counsel was ineffective for failing to raise a claim pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), on direct appeal. With regard to the first claim, he also argues that the circuit court erred in limiting discovery and by ordering his attorney and investigator not to contact jurors directly.
Subsequent to the filing of this appeal, but after this court heard oral argument and took the matter under advisement, the Governor commuted petitioner's death sentence to life imprisonment without the possibility of parole or mandatory supervised release. Commutation removes the judicially imposed sentence and replaces it with a lesser, executively imposed sentence. People ex rel. Johnson v. Murphy, 257 Ill. 564, 566, 100 N.E. 980 (1913); Black's Law Dictionary 274 (7th ed.1999). Thus, because circumstances have changed during the pendency of the appeal that prevent this court from rendering effectual relief (People v. Jackson, 199 Ill.2d 286, 294, 263 Ill.Dec. 819, 769 N.E.2d 21 (2002)), the sentencing issue is rendered moot. See, e.g., Lewis v. Commonwealth, 218 Va. 31, 38, 235 S.E.2d 320, 325 (1977); State v. Mitchell, 239 Or. 87, 88, 396 P.2d 572, 573 (1964). We, therefore, address only the nonsentencing issues.
This court has previously described the facts underlying petitioner's conviction in our opinion on his direct appeal. Williams, 181 Ill.2d 297, 229 Ill.Dec. 898, 692 N.E.2d 1109. Thus, we will refer to those facts only as necessary in the discussion of the remaining issues raised in petitioner's postconviction petition.

ANALYSIS
The Post-Conviction Hearing Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. People v. Towns, 182 Ill.2d 491, 502, 231 Ill. Dec. 557, 696 N.E.2d 1128 (1998). A petition for postconviction relief is not an appeal of the underlying judgment. Rather, it is a collateral proceeding and, as such, permits inquiry only into constitutional issues that were not, and could not have been, adjudicated on direct appeal. Towns, 182 Ill.2d at 502, 231 Ill.Dec. 557, 696 N.E.2d 1128. Thus, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of res judicata; issues that could have been raised, but were not, are considered waived. Towns, 182 Ill.2d at 502-03, 231 Ill.Dec. 557, 696 N.E.2d 1128. The doctrines of res judicata and waiver will, however, be relaxed in three circumstances: where fundamental fairness so requires, where the waiver stems from the ineffective assistance of appellate counsel, or where the facts relating to the claim do not appear on the face of the original appellate record. People v. Whitehead, 169 Ill.2d 355, 371-72, 215 Ill.Dec. 164, 662 N.E.2d 1304 (1996).
Postconviction proceedings in capital cases are governed by section 122-2.1 of the Act (725 ILCS 5/122-2.1 (West *453 1998)), which requires the circuit court to determine initially "whether the petitioner, if indigent, wants to be represented by counsel. After the petitioner makes that choice, the matter is then docketed for further proceedings." People v. Thomas, 195 Ill.2d 37, 40, 252 Ill.Dec. 684, 743 N.E.2d 552 (2001). The State must then either answer the petition or move to dismiss it. 725 ILCS 5/122-5 (West 1998); Thomas, 195 Ill.2d at 40, 252 Ill.Dec. 684, 743 N.E.2d 552. If the State moves to dismiss the petition, the circuit court must examine and rule on the legal sufficiency of each of defendant's claims, taking all well-pleaded facts as true. People v. Ward, 187 Ill.2d 249, 255, 240 Ill.Dec. 636, 718 N.E.2d 117 (1999). If the allegations of the postconviction petition, supported by the trial record and any accompanying affidavits, do not make a substantial showing of a constitutional violation, the petition may be dismissed. People v. Orange, 195 Ill.2d 437, 448, 255 Ill.Dec. 450, 749 N.E.2d 932 (2001). If the petition does make a substantial showing of a constitutional violation, the matter proceeds to a hearing on the merits of petitioner's claims. People v. Hobley, 182 Ill.2d 404, 428, 231 Ill.Dec. 321, 696 N.E.2d 313 (1998).
This court acquired jurisdiction over the present case because petitioner was under a sentence of death at the time he filed his notice of appeal from the denial of his postconviction petition. Oral arguments were heard in September 2002, and the matter was taken under advisement. After petitioner's sentence was commuted, this court issued an order retaining jurisdiction. Although petitioner is now serving a life sentence, we continue to have jurisdiction. In the interest of judicial economy, we choose to dispose of this matter, rather than transfer it to the appellate court.
Because the circuit court dismissed petitioner's claims without a hearing on the basis that he failed to make a substantial showing of a constitutional violation, our review of the issues raised in this appeal is de novo. People v. Coleman, 183 Ill.2d 366, 389, 233 Ill.Dec. 789, 701 N.E.2d 1063 (1998). As to the additional claim that the circuit court erred by limiting discovery, we review the circuit court's decisions regarding discovery for abuse of discretion. People v. Fair, 193 Ill.2d 256, 265, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000).

A. Juror Misconduct and Denial of Discovery
The investigator employed by postconviction counsel was able to identify 7 of the 14 jurors (12 jurors and 2 alternates) who were present for petitioner's trial. He spoke to several of them and left his card with others with a request that they contact him for an interview. One juror, John Sinadinos, provided the affidavit that is the basis for the claim of juror misconduct. In his sworn statement, Sinadinos described an exchange that he had with another juror during the trial. The other juror mentioned that she "had a conversation" with her husband about one of the issues in the case. When a third juror commented that they had been instructed not to discuss the case with others, she responded that it was "hard not to."
The circuit court denied petitioner's motion for discovery of the names and addresses of unidentified jurors. In addition, the circuit court ordered defense counsel and his investigator to cease their efforts to contact jurors directly, based in part on an assertion by the State that several jurors had contacted the State's Attorney's office because they were upset by the investigator's request for an interview.
*454 In response to a suggestion by the State, the circuit court ordered the jury commission to send a letter to the jurors explaining that petitioner's attorney wished to speak to them. The letter further stated that the jurors had a right to speak to the attorney as well as "the right to be left alone." The jurors were instructed to call a certain telephone number if they were willing to be interviewed. They were also told to call the chief judge's office "immediately" if they were "contacted by any attorneys involved in the current proceedings." If they were not willing to be interviewed, the jurors did not need to respond to the letter. "The choice is yours," the letter emphasized. The letter was reviewed and approved by the circuit court before mailing.
Petitioner objected to the use of the letter, arguing that the wording sent an implied message that the jurors should not respond. This court denied his petition for leave to file a petition for a writ of prohibition to prevent the mailing of the letters, as well as his motion to issue a supervisory order to vacate the circuit court's order banning any further contact with the jurors. The letters were sent; none of the jurors responded.
Because none of the jurors came forward voluntarily and because counsel and the investigator were prohibited from making any further efforts to contact the jurors directly, petitioner filed a motion to depose the jurors. The circuit court denied this motion.
Neither the discovery rules for civil cases nor the rules for criminal cases apply to proceedings under the Act. People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 181-83, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). However, the circuit court has the inherent discretionary authority to order discovery in postconviction proceedings. Fair, 193 Ill.2d at 264, 250 Ill.Dec. 284, 738 N.E.2d 500. This authority must be exercised with caution, because of the potential for abuse of the discovery process and because of the limited scope of postconviction proceedings. Fair, 193 Ill.2d at 264, 250 Ill.Dec. 284, 738 N.E.2d 500. Thus, discovery should be allowed only after the moving party demonstrates good cause for the request. Fair, 193 Ill.2d at 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500, citing Daley, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d 131.
Petitioner asserts that the Sinadinos affidavit demonstrates that at least one juror failed to follow the trial court's instruction that she not discuss the case with anyone. This information, he claims, is sufficient to demonstrate good cause, specifically, the possibility of an improper outside influence on the juror in question, who has not yet been identified. He argues that a finding of good cause is implicit in the circuit court's order that the jurors be contacted by letter. As such, he argues that it was error to deny his request to discover the names and addresses of the jurors. The error was compounded, he asserts, by the limitation placed on his ability to make any additional efforts to identify and contact the jurors on his own.
The State argues that the circuit court's decision to send the letters was not an indication that it found good cause and that the order prohibiting further contact with jurors was justified. Finally, the State asserts that the Sinadinos affidavit, standing alone, does not demonstrate good cause to allow discovery of the identities of the jurors.
Our review of the record does not reveal either an explicit or an implicit finding of good cause. The circuit court, after denying numerous other discovery motions and agreeing to an in camera inspection of certain records to determine whether they *455 should be made available to petitioner, said:
"Now, that leaves me with the motion for jury records. Before I get to that, I should say with regards to all of the motions that I have denied thus far, there have not been sufficient showings in the Court's mind, to satisfy the Court that discovery sought and denied should be entered into.
Discovery is not meant to be a fishing expedition. Where legitimate issues can be investigated and developed, that's fine. But where no basis is provided to show the existence of legitimate issues we are not going to engage in Monday morning quarterbacking * * *.
That's not the purpose of post-conviction petitions. Mere allegations of abuse or improper conduct are insufficient to constitute a basis for discovery."
The circuit court then announced its intention to order the jury commission to send a certified letter to the jurors, informing them that petitioner's attorney wanted to talk to them. We do not find anything in these comments to suggest a finding of good cause. Indeed, the circuit court explained that its intention in sending the letters was to protect the jurors from unwanted intrusion, not to facilitate discovery of the juror's identities.
Further, our review of the transcript reveals that the reasons offered by counsel for discovery of the identities of the jurors included not only the conversation described in the Sinadinos affidavit, but also the allegation that a witness had seen unnamed jurors reading newspapers during a recess in the trial. In addition, counsel mentioned "outbursts in the courtroom," comments made from the gallery, incidents in which spectators made comments to petitioner, and spectators wearing police uniforms or buttons in memory of the victim. Counsel argued that "[w]ithout talking to each one of the jurors" he would be unable to determine what they noticed: "Did they see it, hear it, things like that?" Further, "We do have information that there was [sic] things going on in the gallery and in the courthouse that could have affected the jurors." "[W]ithout talking to them," he argued, "[w]e have no way of knowing."
Counsel admitted that the identities of the jurors were being sought so that they could be asked what they read, whom they talked to, and what they observed during the trial that might have influenced their deliberations. Thus, petitioner's effort to discover the identity of the jurors was precisely the type of "fishing expedition" that our rule in Fair was designed to avoid. We, therefore, conclude that the circuit court's denial of the request for discovery of juror names and addresses was not an abuse of discretion.
We further conclude that the circuit court did not abuse its discretion by restricting further efforts by counsel and the investigator to contact the jurors directly. The investigator had already identified and contacted seven of the jurors. According to petitioner's brief, a few of these individuals spoke to the investigator. Of those who did not, several called the State's Attorney's office seeking advice and were told that they did not have to talk to the investigator. Their unwillingness to discuss the details of their jury service was made clear by their lack of response to both the investigator's inquiry and the jury commission letter. Further contact with these individuals would have been intrusive and unjustified. The circuit court did not abuse its discretion by acting to protect them from further unwanted contacts.
As to the other jurors, the investigator was unable to identify them by name or to *456 obtain their addresses. Therefore, an order that the investigator and counsel not contact these individuals cannot have affected petitioner's ability to present his claim of juror misconduct.
Discovery issues aside, petitioner argues that the circuit court erred by dismissing his claim of juror misconduct without an evidentiary hearing. He relies on our decision in People v. Hobley, 182 Ill.2d 404, 231 Ill.Dec. 321, 696 N.E.2d 313 (1998), to argue the Sinadinos affidavit, which must be taken as true (Ward, 187 Ill.2d at 255, 240 Ill.Dec. 636, 718 N.E.2d 117), is sufficient to entitle him to a hearing on his claim that the juror misconduct resulted in the deliberations being subject to an improper extraneous influence and that, as a result, he was denied a fair trial.
In Hobley, we acknowledged the long-standing rule that a jury verdict is not subject to impeachment by the testimony of a juror. Hobley, 182 Ill.2d at 457, 231 Ill.Dec. 321, 696 N.E.2d 313. Strong public policy considerations underlie this rule, which prevents the admission of a juror's affidavit to show the "`motive, method or process by which the jury reached its verdict.'" Hobley, 182 Ill.2d at 457, 231 Ill.Dec. 321, 696 N.E.2d 313, quoting People v. Holmes, 69 Ill.2d 507, 511, 14 Ill.Dec. 460, 372 N.E.2d 656 (1978). As the United States Supreme Court has noted:
"`[If it is] established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication [then] all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigationto the destruction of all frankness and freedom of discussion and conference.'" Tanner v. United States, 483 U.S. 107, 119-20, 107 S.Ct. 2739, 2747, 97 L.Ed.2d 90, 105-06 (1987), quoting McDonald v. Pless, 238 U.S. 264, 267-68, 35 S.Ct. 783, 784, 59 L.Ed. 1300, 1302 (1915).
This rule, which prevents admission of juror testimony to impeach the verdict, does not preclude admission of juror testimony offered as proof of improper extraneous influences on the jury. Hobley, 182 Ill.2d at 458, 231 Ill.Dec. 321, 696 N.E.2d 313.
The distinction between "motive, method or process" and an improper extraneous influence was illustrated in Hobley. We determined that Hobley was not entitled to an evidentiary hearing on his claim that he was prejudiced by the conduct of the jury foreperson during deliberations, despite allegations that he intimidated the other jurors. Hobley, 182 Ill.2d at 463, 231 Ill. Dec. 321, 696 N.E.2d 313. We found this claim properly dismissed by the circuit court as an attempt to impeach the method or process by which the jury reached its verdict. Hobley, 182 Ill.2d at 465, 231 Ill.Dec. 321, 696 N.E.2d 313.
We did, however, determine that Hobley was entitled to an evidentiary hearing on his claim that jurors were affected by an incident that occurred in the dining room of the hotel where the jury was sequestered. Hobley, 182 Ill.2d at 462, 231 Ill. Dec. 321, 696 N.E.2d 313. The affidavits of three jurors described an incident in which several other diners recognized the jury and shouted at them, using vulgar and intimidating language, that Hobley was guilty and should be executed. One affidavit stated that the incident "upset *457 quite a few of the jurors" and that the affiant "was scared" and felt that her life was in danger. Another juror's affidavit stated that although he was not present for the incident, he observed that several of the jurors who had been present were "extremely shaken." Hobley, 182 Ill.2d at 458-59, 231 Ill.Dec. 321, 696 N.E.2d 313.
Because this incident involved "prejudicial outside influences" on the jury, an evidentiary hearing was warranted. Hobley, 182 Ill.2d at 459, 231 Ill.Dec. 321, 696 N.E.2d 313. In reaching this conclusion, we stated:
"`"It is well settled in Illinois that any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial. Although this presumption of prejudice is not conclusive, the burden rests upon the State to establish that such contact with the jurors was harmless to defendant."'" Hobley, 182 Ill.2d at 460, 231 Ill.Dec. 321, 696 N.E.2d 313, quoting People v. Mitchell, 152 Ill.2d 274, 341, 178 Ill.Dec. 354, 604 N.E.2d 877 (1992), quoting People v. Harris, 123 Ill.2d 113, 132, 122 Ill.Dec. 76, 526 N.E.2d 335 (1988).
We rejected the State's contention that Hobley was required to submit juror affidavits stating that the incident in the hotel actually prejudiced one or more jurors against defendant. Hobley, 182 Ill.2d at 462, 231 Ill.Dec. 321, 696 N.E.2d 313. Such a requirement, we observed, would violate the rule that "although jurors may testify as to communications and outside influences, `evidence relating to the effect of such influences on the mental processes of jury members is inadmissible.'" Hobley, 182 Ill.2d at 462, 231 Ill.Dec. 321, 696 N.E.2d 313, quoting People v. Holmes, 69 Ill.2d 507, 514, 14 Ill.Dec. 460, 372 N.E.2d 656 (1978) (distinguishing "actual evidence of the nature of outside influences exerted on the jury," which will be considered, from "evidence relating to the effect of such influences on the mental processes of jury members," which is inadmissible (emphases added)).
Petitioner likens the conversation recounted in the Sinadinos affidavit to the incident in the dining room involving the Hobley jurors. He argues that the unidentified juror's conversation with her husband about an issue in the case, in violation of the judge's instructions, is a similar improper extraneous contact. He asserts that he is entitled to an evidentiary hearing because, according to Hobley and Mitchell, the contact must be deemed presumptively prejudicial.
We disagree. The lesson of Hobley is that a juror affidavit alleging exposure to "prejudicial outside influences" (emphasis added) (Hobley, 182 Ill.2d at 459, 231 Ill. Dec. 321, 696 N.E.2d 313), is sufficient to raise a presumption of prejudice and to shift the burden to the State to establish that such contacts were harmless. See also Fed.R.Evid. 606(b), quoted with approval in Holmes, 69 Ill.2d at 516, 14 Ill. Dec. 460, 372 N.E.2d 656 (juror testimony is admissible to prove "`whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror'").
The Sinadinos affidavit contains nothing more than the mere assertion that an improper conversation occurred. The affidavit contains no information about the nature of the conversation. That is, it offers no evidence that the alleged conversation was prejudicial in any respect. Indeed, the juror may have been the one doing the talking while her husband simply listened. The husband may have made remarks that were critical of the judge or of the prosecution. The "issue" discussed *458 may have been the decision not to sequester the jury or how long the proceedings should go on each day. In sum, the Sinadinos affidavit establishes only that a member of the jury was having difficulty overcoming the temptation to discuss the case with her husband. It does not establish that the improper conversation was prejudicial in nature.
In considering this issue, we must also keep in mind that the case is before us on appeal from the dismissal of a postconviction petition. In this proceeding, the petitioner has the initial burden of making a showing of a substantial violation of his constitutional rights. Orange, 195 Ill.2d at 448, 255 Ill.Dec. 450, 749 N.E.2d 932. The Sinadinos affidavit is readily distinguishable from the affidavits that justified an evidentiary hearing in Hobley and in Holmes, 69 Ill.2d at 510, 14 Ill.Dec. 460, 372 N.E.2d 656 (defendant's motion for a new trial was supported by an affidavit of one of defendant's attorneys describing an independent investigation of an item of physical evidence undertaken by members of the jury). In both of these cases, the petitioners met their burden by providing affidavits alleging that jurors were exposed to extraneous information or influences of a prejudicial nature. The Sinadinos affidavit merely alleges that a single juror may have been exposed to extraneous information of an unknown nature.
Construing the allegations in the petition and the affidavit in favor of petitioner, and taking all well-pleaded facts as true (Ward, 187 Ill.2d at 255, 240 Ill.Dec. 636, 718 N.E.2d 117), we find the allegations in the Sinadinos affidavit insufficient to make a substantial showing of a constitutional deprivation. We, therefore, affirm the circuit court's dismissal of the claim of juror misconduct.

B. Ineffective Assistance of Appellate CounselBatson Violation
Of the five African-American venirepersons, four were excused for cause. Petitioner argues that appellate counsel was ineffective for failing to raise a Batson claim as to the State's use of a peremptory challenge to remove the only remaining African-American member of the venire, Warren King. The postconviction petition was accompanied by an affidavit of appellate counsel, in which counsel acknowledged that he was aware petitioner wanted him to raise the Batson issue on direct appeal, but that he had refused to do so. Counsel did not explain the basis for his decision.
The circuit court dismissed this claim, concluding that after a thorough investigation of the law and the facts, appellate counsel made a strategic decision not to raise the Batson claim and that such a decision is virtually unchallengeable on appeal. Strickland v. Washington, 466 U.S. 668, 690-91, 104. S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984).
Appellate counsel is not required to argue every conceivable issue on appeal. Rather, counsel must exercise professional judgment to select from the many potential claims of error that might be asserted on appeal. See People v. Tenner, 175 Ill.2d 372, 387-88, 222 Ill.Dec. 325, 677 N.E.2d 859 (1997). Therefore, we judge a claim that appellate counsel was ineffective for failing to argue a particular issue, not on the basis of what the defendant might have preferred, but under the standard set forth in Strickland. To succeed on this claim, petitioner must show that appellate counsel's failure to raise the Batson claim was objectively unreasonable and that, absent this failure, his conviction or sentence would have been reversed on direct appeal. People v. Richardson, 189 Ill.2d 401, 412, 245 Ill.Dec. 109, 727 N.E.2d *459 362 (2000). See also People v. Madej, 177 Ill.2d 116, 159, 226 Ill.Dec. 453, 685 N.E.2d 908 (1997) (stating that counsel's decision as to what issues to raise on direct appeal will not be questioned unless "patently erroneous"). Thus, if the Batson claim is completely without merit, appellate counsel's refusal to raise the issue, despite petitioner's instructions to the contrary, was reasonable.
Batson established a three-step procedure to determine whether the State's use of peremptory challenges resulted in the removal of venirepersons on the basis of race. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. People v. Munson, 171 Ill.2d 158, 174, 215 Ill.Dec. 125, 662 N.E.2d 1265 (1996). Second, once such a showing has been made, the burden shifts to the State to provide a race-neutral explanation for excluding each of the venirepersons in question. Munson, 171 Ill.2d at 174-75, 215 Ill.Dec. 125, 662 N.E.2d 1265. Defense counsel may rebut the proffered explanations as pretextual. People v. Mitchell, 152 Ill.2d 274, 288, 178 Ill.Dec. 354, 604 N.E.2d 877 (1992). Finally, the trial court determines whether the defendant has met his burden of demonstrating purposeful discrimination. Munson, 171 Ill.2d at 174, 215 Ill.Dec. 125, 662 N.E.2d 1265.
In the present case, defense counsel objected to the State's use of a peremptory challenge to excuse King. Without waiving its objection that defense counsel had failed to establish a prima facie case, the State offered six reasons for excluding King from the jury: (1) he did not list his birthdate in the space provided on the juror questionnaire, (2) he did not appear to be paying attention during voir dire, (3) he seemed to avoid eye contact with the court and either attorney, (4) the prosecutor did not like his demeanor or "body language," (5) he had "an exceptionally hard time understanding the Witherspoon questions" (see Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)), and (6) his father died during the course of jury selection and the prosecutor had concerns about his emotional state as a result of this loss. Defense counsel argued pretext. The trial court found the reasons offered by the State to be race-neutral and nonpretextual.
Petitioner argues that only two of these reasons, the confusion regarding the Witherspoon questions and the death of King's father, are objective factors. The rest are subjective assessments that should be given close scrutiny because such perceptions may easily be used as a pretext for discrimination. See People v. Wiley, 165 Ill.2d 259, 274-75, 209 Ill.Dec. 261, 651 N.E.2d 189 (1995). He also argues that the two objective reasons offered for King's exclusion from the jury were pretextual. Specifically, he notes that King's answers to the Witherspoon questions revealed no bias for or against the death penalty and that several other jurors had at least as much difficulty understanding the questions as he did. In fact, all but one of the venirepersons who were selected to serve on the jury required the court to repeat one or more of the Witherspoon questions.
In addition, King was not the only member of the venire to suffer the death of a family member during jury selection. A white female venireperson also asked to be excused for half a day to attend the funeral of a family member. She was not questioned by the State about her relationship to the deceased or about any effect the death might have had on her ability to deliberate. The State did not use one of its peremptory challenges to remove her. King, however, was asked about his emotional *460 state following the death of his father, and he stated that his ability to serve as a juror would not be affected.
We have previously held that the State's exclusion of a minority venireperson based on a certain characteristic, while accepting a white venireperson who shares the same characteristic, does not necessarily show that the State's explanation is pretextual. People v. Young, 128 Ill.2d 1, 23 (1989). In Wiley, we explained:
"The State's purposeful discrimination is not automatically established by the mere coincidence that an excluded juror shared a characteristic with a juror who was not challenged. The excluded juror may possess an additional trait that caused the State to find him unacceptable, while the juror who was not challenged may possess an additional characteristic that prompted the State to find him acceptable to serve as a juror. [Citation.] `[A] peremptory challenge is based on a combination of traits, and a juror possessing an unfavorable trait may be accepted while another juror possessing that same negative trait, but also possessing other negative traits, may be challenged.'" Wiley, 165 Ill.2d at 282-83, 209 Ill.Dec. 261, 651 N.E.2d 189, quoting Mitchell, 152 Ill.2d at 295, 178 Ill.Dec. 354, 604 N.E.2d 877.
In People v. Easley, 192 Ill.2d 307, 249 Ill.Dec. 537, 736 N.E.2d 975 (2000), for example, the State offered three reasons for its peremptory challenge of an African-American venireperson. First, the prosecutor believed that the individual lied when he stated that he did not know that two of his adult children had recently been convicted of crimes and sentenced to probation. Easley, 192 Ill.2d at 325, 249 Ill.Dec. 537, 736 N.E.2d 975. Second, the prosecutor excluded the individual because he lived in a neighborhood that experienced street gang activity. Easley, 192 Ill.2d at 325-26, 249 Ill.Dec. 537, 736 N.E.2d 975. Third, the prosecutor excluded the individual because he "vacillated" and "hesitated" in his answers to questions about the death penalty, Easley, 192 Ill.2d at 326-27, 249 Ill.Dec. 537, 736 N.E.2d 975.
The defendant argued that each of these reasons was a mere pretext for racial discrimination. The individual had explained during voir dire that he did not know of his childrens' convictions because they had not lived with him for 20 years. Easley, 192 Ill.2d at 325, 249 Ill.Dec. 537, 736 N.E.2d 975. The prosecutor did not ask any additional questions to clarify this matter. We held that the prosecutor's conclusion that the individual was lying, without exploring the subject further by asking supplemental questions, did not lead to the conclusion that this reason was pretextual. Easley, 192 Ill.2d at 325, 249 Ill.Dec. 537, 736 N.E.2d 975.
As to the gang activity in the individual's neighborhood, we noted that using this fact as a basis for excluding venirepersons could result in a disproportionate impact on minority jurors. Easley, 192 Ill.2d at 326, 249 Ill.Dec. 537, 736 N.E.2d 975. However, unless the prosecutor adopted this criterion with the intent of excluding minority jurors, the disproportionate impact itself would not compel a finding of pretext. Easley, 192 Ill.2d at 326, 249 Ill.Dec. 537, 736 N.E.2d 975. Because the State's theory of the case involved gang violence and retaliation, a potential juror's experience or exposure to an environment of gang activity was particularly relevant as a criterion for jury selection. Easley, 192 Ill.2d at 326, 249 Ill.Dec. 537, 736 N.E.2d 975.
With regard to the prosecutor's concern with the individual's demeanor, we noted that although demeanor is a legitimate race-neutral reason for exercising a peremptory challenge, such explanations must *461 be closely scrutinized. Easley, 192 Ill.2d at 327, 249 Ill.Dec. 537, 736 N.E.2d 975. The defendant argued that the demeanor explanation was pretextual because the prosecutor accepted three white venirepersons who were equally tentative about their support for the death penalty. Easley, 192 Ill.2d at 327, 249 Ill.Dec. 537, 736 N.E.2d 975. We rejected this argument, noting that the peremptory challenge of this individual was "based on a combination of traits" and that, although he shared this trait with three accepted jurors, they were not similarly situated because he possessed two additional undesirable traits. Easley, 192 Ill.2d at 327, 249 Ill.Dec. 537, 736 N.E.2d 975.
In the present case, King and one of the accepted jurors shared the single trait that each experienced the death of a family member while jury selection was taking place. Even if we assume, arguendo, that the family relationships were equally close and that both individuals were equally likely to be affected by their loss, King and the female juror were not similarly situated. He required that four of the Witherspoon questions be repeated; she asked for one question to be repeated. Nor was King similarly situated to the other jurors who asked that questions be repeated. None of them had just experienced the death of a parent. In addition, King was distinguished from the accepted jurors by the fact that he did not completely fill out his juror questionnaire.
In sum, we conclude that appellate counsel's decision not to raise the Batson claim on direct appeal was reasonable. This claim was properly dismissed by the circuit court.

CONCLUSION
We affirm the judgment of the circuit court with respect to the issues that were not rendered moot by the commutation of petitioner's death sentence.
Affirmed.