2024 IL App (1st) 161404-B

Nos. 1-16-1404 & 1-22-1242 (Consolidated)

Opinion filed May 31, 2024

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11 CR 1869701 |
| | ) | |
| WILLIAM WRIGHT, | ) | The Honorable |
| | ) | Michael J. Kane, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment and
opinion.

**OPINION**

¶ 1    Defendant William Wright challenges the State's use of peremptory challenges to exclude five black venirepersons during jury selection in violation of the equal protection clause of the federal and Illinois constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. 1, § 2). In a prior appeal, we reversed the circuit court's finding that Wright failed to make a *prima facie* showing of an equal protection violation at the first stage proceeding established by *Batson v. Kentucky*, 476 U.S. 79 (1986); remanded the case for second and third stage proceedings under *Batson*; and

retained jurisdiction to resolve any further matters following the remand hearing. *People v. Wright*, 2019 IL App (1st) 161404-U.

¶ 2    On remand, the circuit court denied Wright's *Batson* challenge, determining he failed to establish that the State acted with purposeful discrimination in excluding black venirepersons. Wright now appeals, arguing the circuit court's decision was clearly erroneous because (1) the State impermissibly provided a race-based reason for striking one of the black venirepersons and (2) the State's race-neutral reasons for excluding black venirepersons were pretext for purposeful discrimination. We hold that the State used a peremptory challenge to exclude a black venireperson based on race in violation of the equal protection clause of the federal and Illinois constitutions. Accordingly, the conviction is reversed, sentence vacated, new trial ordered.

¶ 3                                    I. BACKGROUND

¶ 4    Prosecutors charged Wright with attempted first degree murder of a police officer, aggravated battery of a firearm causing bodily harm, and other gun related charges. The case proceeded to jury selection, and the circuit court questioned 36 members of the venire. The court struck 5 black, 2 white, and 1 Latinx venirepersons for cause, leaving, by the court's count, 10 Blacks, 13 whites, and 5 Latinx available for the jury.

¶ 5    The prosecutor used its seven peremptory challenges to strike one white, one Latinx, and five black venirepersons. Because our decision below is dispositive on the issues concerning the State's challenge of Deonte Hickman, a 20-year-old black venireperson, the proceeding facts solely focus on him. The following colloquy occurred during the court's questioning of Hickman:

> "[THE COURT]: So, Mr. Hickman, if you would stand up and answer the questions on the questionnaire.

MR. HICKMAN: My name is Deonte Hickman, H-I-C-K-M-A-N. Calumet City. Own. Mom and grandma. Five years. No children. Current employment; a construction company. No spouse/domestic partner. Highest level of schooling; college. I did a year [in] college. No clubs or organizations. Sports; hobby. No newspapers or magazines. No military service and this is my first jury.

THE COURT: Okay. And you said that you lived with your parents?

MR. HICKMAN: Yes.

THE COURT: How long have you lived in Calumet City then?

MR. HICKMAN: Five years.

THE COURT: How many?

MR. HICKMAN: Five years.

THE COURT: Five. Where are you going to school?

MR. HICKMAN: Parker.

THE COURT: Where?

MR. HICKMAN: Parker in Champaign.

THE COURT: And have you ever been accused, a complainant, or a witness in a criminal case?

MR. HICKMAN: No.

THE COURT: And have you ever or any member of your immediate family or close friend ever been the victim of a crime?

MR. HICKMAN: No.

THE COURT: And have you or any member of your immediate family ever been a party to a lawsuit?

MR. HICKMAN: No.

THE COURT: And do you do construction then around the City of Chicago?

MR. HICKMAN: Yes.

THE COURT: Or the County?

MR. HICKMAN: Uh-huh.

THE COURT: Yes?

MR. HICKMAN: Yes.

THE COURT: You have to answer so the Court Reporter can take it down.

MR. HICKMAN: What you mean?

THE COURT: You can't say uh-huh.

MR. HICKMAN: I said yes.

THE COURT: Okay. And do you have any family members or friends who are police officers or attorneys?

MR. HICKMAN: No.

THE COURT: And is there anything that you want [to] tell us about yourself that would help the attorneys make a decision about whether or not you would be a fair and impartial juror?

MR. HICKMAN: No.

THE COURT: And how long have you been working?

MR. HICKMAN: With the construction company?

THE COURT: Yes.

MR. HICKMAN: Ever since I got out of grammar school.

THE COURT: For the construction company?

MR. HICKMAN: Uh-huh, because it's my father's.

THE COURT: Oh. What kinds of sports are you interested in?

MR. HICKMAN: Basketball.

THE COURT: Okay. Mr. Hickman, thank you.

* * *

THE COURT: You know, I am sorry. It's getting late. Sit down just a second. I do have to ask the attorneys if they have any questions.

[ASSISTANT STATE'S ATTORNEY]: Yes. Thank you, Judge. I will go quickly. Mr. Hickman, you said that you went to about a year in college?

MR. HICKMAN: Uh-huh.

[ASSISTANT STATE'S ATTORNEY]: What did you study?

MR. HICKMAN: Construction engineering.

[ASSISTANT STATE'S ATTORNEY]: And when you got out you started working again with your family?

MR. HICKMAN: Yes.

[ASSISTANT STATE'S ATTORNEY]: What would you do for the construction company?

> MR. HICKMAN: Like I help put up drywall, painting, screws.
>
> [ASSISTANT STATE'S ATTORNEY]: Just throughout Chicago?
>
> MR. HICKMAN: Uh-huh."

¶ 6    The prosecutor used its peremptory challenge to exclude Hickman from the jury after questioning. Defense counsel challenged the State's peremptory challenges of Hickman as racially motivated. Following the first stage *Batson* proceeding, the circuit court found Wright failed to make a *prima facie* showing that the prosecutor discriminated on the basis of race in exercising her peremptory challenges.

¶ 7    The case proceeded to trial. The jury found Wright guilty of attempted murder of a police officer and aggravated battery to a police officer, and the court sentenced him to 60 years' imprisonment. Wright filed a motion for a new trial, contesting, *inter alia*, the circuit court's ruling on the *Batson* motion. The court denied the motion, determining:

> "[One Black woman] got a relative out of jail on a gun charge[ ] that was later dropped ***. [Another Black woman] had a friend who was a Defense attorney and said it was the Defense attorney's job to present reasonable doubt, and the last African American female *** said she never called the police after her home was vandalized ***.
>
> *** [A]nother African American said she was a member of a social justice organization and that her husband was attacked and did not call the police, and [prosecutors used another strike against] an African American male [who] was very young. He was 20 years old. I find that these jurors were not a he[t]erogeneous group ***. I find that the Defense did not meet the *prima facie* threshhold [*sic*]."

¶ 8 On appeal, we reversed the circuit court's *Batson* finding and remanded the case for second and third stage proceedings under *Batson* before a newly assigned judge. *Id.* At the *Batson* hearing on remand, the prosecutor offered her explanations for excluding Hickman. Hickman was "very tight-lipped and uninterested in the proceedings," and the prosecutor believed his behavior would "carry over to trial and deliberations." According to the prosecutor, Hickman also appeared "confrontational or aggravated or agitated" when the judge asked him questions. The judge had to repeat questions and had trouble hearing Hickman. The prosecutor further asserted that the record exhibited Hickman's unfavorable behavior, stating:

"you can even tell from the record and the words that are spoken that there was some push back and pull between him and the judge, somewhat disrespectful, probably more on the uninterested side, but didn't like to have the questions repeated to him and that became clear to us during the whole questioning process."

¶ 9 The prosecutor referenced this court's comparison of two young non-black jurors in *Wright*—Lauren Guerra and Yaritza Gutierrez-Martinez. Guerra was different from Hickman because she "answered the questions," "didn't have a back and forth with the judge," "didn't seem annoyed or frustrated," and "was attentive and interested in the proceedings unlike Hickman." Gutierrez-Martinez was different from Hickman because she "provided specific information, even volunteered information about going to court for a domestic violence issue," and her participation in court on a matter where she was a victim of a crime showed her trust in the criminal justice system. The prosecutor further explained:

"In addition to his questionable demeanor—when I say demeanor, that's what I'm talking about, that back and forth and the not volunteering any information and not listening

to the questions. He was young, he was living at home, and the concern there is that he also was a young African American who might identify with the Defendant who was around the same age at the time that this offense, the actual shooting of Officer Bansley, was committed.

In *People v. Randall*, 283 Ill. App. 3d 1019 the court said a lack a [*sic*] maturity is a race-neutral reason to excuse a venire person. And maybe that behavior and that back and forth with the judge was that lack of maturity, he was just a younger guy, but the courts have said that is a race-neutral reason that we can use to excuse somebody."

¶ 10    Defense counsel countered that the diminished sound quality in the courtroom during jury selection contributed to Hickman's responses. Hickman was not combative or evasive and "wasn't trying to get out of jury service." Counsel noted that Judge O'Brien, who presided over the jury selection, stated the reason for the State's challenge was Hickman's youth and "gave no observation that he was confrontational or not answering her questions, or him being evasive, tightlipped, not wanting to participate." The parties then had the following colloquy about the State's comment regarding Hickman's race:

"[ASSISTANT PUBLIC DEFENDER]: I think with regard to Mr. Hickman, the State actually gave you the honest answer as to why they struck him. She said he was a young African American male who may identify with the Defendant. That's what she said today. And I would suggest to you that's the real reason. But that's not a race-neutral reason, that's actually the opposite of a race-neutral reason to say that he's a young African American male who may identify with the Defendant.

[ASSISTANT STATE'S ATTORNEY]: Objection.

[ASSISTANT PUBLIC DEFENDER]: That's what she said.

[ASSISTANT STATE'S ATTORNEY]: I said he would have sympathy for the Defendant.

THE COURT: I'll look at the transcript again. My recollection is my recollection, but I'll look at the transcript.

[ASSISTANT STATE'S ATTORNEY]: That was the intent."

¶ 11    At the conclusion of the *Batson* hearing, the circuit court determined the prosecutor did not act with purposeful discrimination based on her explanation that Hickman exhibited an unfavorable demeanor and the supporting record. The court found, "the cold transcript of [Hickman's] questioning confirmed his unwillingness to share information about himself." Hickman's answers were "short" and "somewhat difficult to analyze." Hickman "didn't fully answer questions and he clearly did not want to engage with lawyers during the selection process." Hickman's behavior "revealed a personality who was not cooperative with the process."

¶ 12    Defense counsel filed a motion to reconsider, arguing that the State's reasons for excluding Hickman were contrary to the record where other non-black jurors answered questions in ways similar to Hickman and the record did not show Hickman was confrontational and tight-lipped. Furthermore, the State's exclusion of Hickman was substantially motivated by race because it "explicitly listed his race as a reason for striking him." In response, the State denied that the reason for excluding Hickman was due to his race, asserting that Hickman's race was for the purpose of making a record. The State wanted jurors who were good communicators and detail oriented. The prosecutor asserted that Hickman's statements that he lived in Calumet City for the past five years

and also attended college in Champaign were inconsistent and exhibited inattention to detail and that he was not listening to the questions.

¶ 13    The prosecutor acknowledged Wright's claim that there were other non-black jurors who provided relatively short responses—namely, Lauren Guerra, Yaritza Gutierrez-Martinez, Alicia Heffernan, and Gabriela Bello-Parra—and provided its rebuttal. Gutierrez-Martinez gave responses that showcased she was "more mature" and proved to have more responsibilities and life experiences than Mr. Hickman. Her prior experience with the court system showed her trust in the judicial system and that she and her uncle, who was a new sheriff's officer, did not discuss his work was a "positive attribute." Heffernan obtained a bachelor's degree and was working on her master's degree, provided more details about her life experience serving on a jury, and had friends who were Chicago Police Officers. Guerra "proved she had a significant level of responsibility that Mr. Hickman did not have—she completed her degree in college and she cared for another family's children." She also provided details when asked a yes or no question. Bello-Parra's life experience was "significantly dissimilar" to Hickman's where she was married, had a daughter, completed two years of college, and worked at a school district where she taught students who were not close in age with Wright. While she "had no details to add to the trial court's follow-up questions, her demeanor and attitude was in complete contrast to Mr. Hickman." After considering the parties' pleadings, the circuit court denied the motion to reconsider. This appeal follows.

¶ 14                               II. JURISDICTION

¶ 15    The circuit court denied the *Batson* challenge on April 11, 2022, and Wright filed a timely motion to reconsider. The court denied the motion on July 29, 2022, and Wright filed a notice of

appeal on August 12, 2022. This court retained jurisdiction to resolve any further issues upon completion of this case on remand. See *id.* ¶ 34.

¶ 16                                    III. ANALYSIS

¶ 17    On appeal, Wright argues the circuit court erred in finding the State's use of peremptory challenges on five black venirepersons did not violate the equal protection clause because (1) the prosecutor's concern that Hickman would identify with Wright as a "young African American" was impermissibly racially motivated on its face and (2) the State's race-neutral reasons for excluding five black venirepersons were pretext for purposeful discrimination.

¶ 18    The United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Baston*, 476 U.S. at 89. *Batson* established a three-step procedure to determine whether the State's use of peremptory challenges resulted in the removal of venirepersons based on race. *Id.*; *People v. Williams*, 209 Ill. 2d 227, 244 (2004).

¶ 19    First, the defendant must make a *prima facie* showing that the prosecutor exercised peremptory challenges based on race. *Williams*, 209 Ill. 2d at 244. Next, once such a showing has been made, the burden shifts to the State to provide a race-neutral explanation for excluding each of the veniremembers in question. *Id.* Defense counsel may rebut the proffered explanations as pretextual. *Id.* A neutral explanation is one based on something other than the race of the juror. *Hernandez v. New York*, 500 U.S. 352, 360 (1991). The prosecutor must give clear and reasonably specific, legitimate, race-neutral reasons. *People v. Morales*, 308 Ill. App. 3d 162, 168 (1999). The issue is the facial validity of the prosecutor's explanation. *Hernandez*, 500 U.S. at 360. The

explanation need not be persuasive, or even plausible. *People v. Easley*, 192 Ill. 2d 307, 324 (2000). "A legitimate reason is not a reason that makes sense, but rather is a reason that does not deny equal protection." *Id.* The State's explanations must constitute more than a mere denial of discriminatory motive. *Morales*, 308 Ill. App. 3d at 168. A prosecutor's explanation will be considered race neutral unless a discriminatory intent is inherent in the explanation. *Hernandez*, 500 U.S. at 360. "Discriminatory intent may be found to be inherent where the proffer of a supposedly race-neutral explanation has a racial ingredient." *United States v. Douglas*, 525 F.3d 225, 238 (2d Cir. 2008).

¶ 20    Finally, the circuit court determines whether the defendant has met his burden of demonstrating purposeful discrimination in light of the explanation and any rebuttal. *Williams*, 209 Ill. 2d at 244. The court's ultimate conclusion on a *Batson* claim will not be disturbed unless it is clearly erroneous. *People v. Davis*, 233 Ill. 2d 244, 261 (2009). The decision is clearly erroneous when we are left with a definite and firm conviction that a mistake has been committed. *People v. Gonzalez*, 2019 IL App (1st) 152760¸ ¶ 68.

¶ 21    The parties first dispute whether race was a basis in the State's reason for excluding Hickman from the jury. Wright argues that the prosecutor's statement that she struck Hickman out of concern that he might "identify" with Wright as another "young African American" was racially motivated and constituted a substantial factor in the State's challenge. The State argues that the prosecutor did not exclude Hickman based on his race. Rather, the full context of the prosecutor's statement reveals she was making a record of identifying the race and gender of the excused venirepersons and emphasizing Hickman's youth, not his race. While we have concerns about the prosecutor's blatant use of the characteristic "young African American" in asserting her reasons

for excluding Hickman, we need not determine the parties' factual dispute. For the following reasons, we find the pretextual nature of the prosecutor's reasons that she challenged Hickman based on his demeanor and status as a "young African American male" create an inference of purposeful discrimination. *Snyder v. Louisiana*, 552 U.S. 472, 485 (2008) ("The prosecution's proffer of this pretextual explanation naturally gives rise to an inference of discriminatory intent.").

¶ 22    First, the record contradicts the prosecutor's explanation for Hickman's demeanor. Providing her reason for why she believed Hickman exhibited unfavorable demeanor, the prosecutor stated, "when I say demeanor, that's what I'm talking about, that back and forth and the not volunteering any information and not listening to the questions." However, our review of the record reveals Hickman responded with the necessary information requested and was not asked questions that called for more information than the responses provided. See *supra* ¶ 5. Hickman also responded appropriately when the court repeated its questions. See *supra* ¶ 5. We do not find that Hickman's behavior demonstrated disinterest or disrespect any more than it showed cooperation with the questioning process. While we generally defer to the circuit court's credibility determination on the State's explanations, we note that the judge to whom the case was assigned on remand reviewed and relied on the same record that is before us. In this view, we hold the court's finding that the record showed Hickman's responses exhibited disinterest or disrespect was clearly erroneous. *In re A.S.*, 2017 IL App (1st) 161259-B, ¶ 29 (the circuit court's credibility findings in *Batson* challenge cases will not be reversed unless they are clearly erroneous (citing *Hernandez*, 500 U.S. at 365-69)).

¶ 23    We come to this conclusion in light of the proposition that we must harshly scrutinize explanations pertaining to demeanor. See *People v. Harris*, 129 Ill. 2d 123, 176 (1989)

("explanations which focus upon a venireperson's body language or demeanor must be closely scrutinized because they are subjective and can be easily used by a prosecutor as a pretext for excluding persons on the basis of race"); *People v. Gaston*, 256 Ill. App. 3d 621, 622 (1993) ("Exclusions on the basis of demeanor are fraught with the potential for abuse and use as a subterfuge for racial discrimination \*\*\*."). This standard is particularly pertinent here, where the State questioned Hickman's demeanor based on his short responses, a factor which this court found not indicative of a venireperson's ability to be a fair and impartial juror. See *People v. Bradshaw*, 2020 IL App (3d) 180027, ¶ 39 (finding prosecutor's explanation that she got a "bad vibe" from venireperson's "terse" responses to questions pretextual).

¶ 24    We also note that Judge O'Brien, who presided over the jury selection proceeding, referenced Hickman's age, not demeanor, when addressing reasons for excluding the five black venirepersons during the hearing on the motion for a new trial. Judge O'Brien referred to Hickman as "an African American male [who] was very young. He was 20 years old." Hickman's youth may not be conclusive of Judge O'Brien's observations, but it is indicative of the characteristics she found significant to justify his exclusion.

¶ 25    The State argued that Hickman exhibited inattention to the judge's questions when he responded that he resided in Calumet City and attended college in Champaign. We find there is a simple explanation for the distinction. It is not unusual for a college student to attend school in one city, either in-person or remotely, and still consider another city as a home residence. Significantly, the prosecutor never sought to clarify this distinction through further questioning, and such failure raises doubt as to the plausibility of the concern. See *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005) (citing *Ex parte Travis*, 776 So. 2d 874, 881 (Ala. 2000) ("[T]he State's failure to engage in any

meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.")).

¶ 26    The State distinguished Hickman from four non-black jurors—Guerra, Gutierrez-Martinez, Heffernan, and Bello-Parra—based on their demeanors, life experiences, and thoroughness of responses. We find the record does not support these distinctions. First, we do not find that demeanor distinguished Hickman from the comparative non-black jurors, where we previously held the prosecutor's concern about Hickman's demeanor was contrary to the record. Second, the record shows the difference in life experiences between the non-black jurors and Hickman is not as drastic as the State contends. The non-black jurors either received a college degree or were currently attending college and were employed like Hickman, who was studying construction engineering in college and worked for his father's construction company. Third, the record demonstrates the non-black jurors provided brief answers similar to Hickman's, contrary to the State's assertion. Guerra responded to the majority of the questions with yes-and-no responses. Guerra provided additional information to one question where a simple "no" would have left unanswered questions as to why she would not work in the field in which she received her degree. Bello-Parra solely responded with yes-and-no responses. Gutierrez-Martinez provided a mixture of yes-and-no and relatively short responses, many of which were provided by the court's further inquiry or prompted by the type of questions asked, *i.e.*, whether she was the accused or complainant in a domestic violence case. Heffernan provided mostly yes-and-no responses. Hence, we find the prosecutor's explanation about Hickman's demeanor was pretext for purposeful discrimination. Although never mentioned as a basis in the court's ruling, we also find the State's explanation that it excluded Hickman based on his youth was pretextual, given the same

comparative juror analysis of Guerra and Gutierrez-Martinez, both of whom the parties reference as young non-black jurors.[1]

¶ 27    The United States Supreme Court held that pretextual explanations give rise to an inference of discriminatory intent. *Snyder*, 552 U.S. at 485; *Purkett v. Elem*, 514 U.S. 765, 768 (1995) ("At [the third] stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination."). Because an adverse inference is created by the pretextual nature of the prosecutor's explanations, we find Hickman's race was the only basis for his exclusion from the jury, rendering the circuit court's ruling clearly erroneous. In light of this holding, we need not address Wright's challenge to the State's exclusion of the remaining black venirepersons. *Flowers v. Mississippi*, 588 U.S. 284, 303 (2019) ("The Constitution forbids striking even a single prospective juror for a discriminatory purpose.").

¶ 28                                   IV. CONCLUSION

¶ 29    We find the State used its peremptory challenge to exclude a black venireperson based on race in violation of the equal protection clause of the federal and Illinois constitutions. Accordingly, we reverse Wright's conviction, vacate his sentence, and remand for a new trial.

¶ 30    Reversed in part and vacated in part; cause remanded.

---

[1]The record shows Guerra was 22 years old. The record does not reflect Gutierrez-Martinez's age; however, the parties refer to her as "young" and believed to be in "her early 20's."

*People v. Wright*, 2024 IL App (1st) 161404-B

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CR-1869701; the Hon. Michael J. Kane, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jonathan Yeasting, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |