NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170618-U

NO. 4-17-0618

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 15, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| BRIAN V. BOWALD, | ) | No. 13CF9 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court held that defendant was denied reasonable assistance of post-conviction counsel because counsel failed to amend defendant's petition. Based on the framing of the issues by the parties and in the interest of judicial economy, the appellate court remanded the case for third stage proceedings.

¶ 2        In May 2013, a jury found defendant, Brian V. Bowald, guilty of four counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008); 720 ILCS 5/11-1.40(a)(1) (West 2012)) and five counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2008); 720 ILCS 5/11-1.60(c)(1)(i) (West 2012)). In June 2013, the trial court sentenced defendant to a total of 66 years in prison. In March 2015, this court affirmed defendant's conviction and sentence on direct appeal. *People v. Bowald*, 2015 IL App (4th) 130587-U, ¶ 1.

¶ 3        In August 2016, defendant *pro se* filed a petition for postconviction relief

pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). Defendant alleged five grounds for relief, including a claim that his trial counsel was ineffective for failing to remove a potentially biased juror. Later that month, the trial court advanced the petition to the second stage, appointing counsel to represent defendant.

¶ 4 In March 2017, defendant filed an amended postconviction petition, which "adopted in its entirety" defendant's *pro se* petition and added two new claims. In May 2017, the State filed a motion to dismiss.

¶ 5 In June 2017, the trial court conducted a hearing on the State's motion. The court dismissed several of defendant's claims, including his ineffective assistance claim regarding the failure to remove a biased juror. The court dismissed the remaining claims after a third stage evidentiary hearing.

¶ 6 Defendant appeals, arguing only that he was denied reasonable assistance of postconviction counsel in violation of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) because (1) the *pro se* petition did *not* make a substantial showing of a constitutional violation and (2) postconviction counsel failed to amend the *pro se* petition to survive second-stage review. In response, the State argues only that defendant's petition stated a complete claim that did not require amendment and does not address the merits of the underlying claim. Under the unique circumstances of this case and based on the framing of the issues by the parties, we conclude counsel failed to comply with Rule 651, but in the interest of judicial economy, we remand for third-stage proceedings.

¶ 7                                    I. BACKGROUND

¶ 8                    A. The Underlying Conviction and Direct Appeal

¶ 9 In February 2013, a grand jury returned an indictment that charged defendant with

four counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008); 720 ILCS 5/11-1.40(a)(1) (West 2012)) and five counts of aggravated criminal sexual abuse. 720 ILCS 5/12-16(c)(1)(i) (West 2008); 720 ILCS 5/11-1.60(c)(1)(i) (West 2012). According to the indictment, defendant repeatedly had sexual contact with B.B. (born December 2002) during the period of January 1, 2010, to January 14, 2013, when she was as young as 7 and as old as 10.

¶ 10    Specifically, the four counts of predatory criminal sexual assault of a child alleged that defendant placed his (1) penis in her vagina, (2) mouth on her vagina, (3) finger in her vagina, and (4) finger in her anus. The five counts of aggravated criminal sexual abuse alleged that he (1) placed his penis on her buttocks, (2) placed her hands on his penis, (3) placed his mouth on her breasts, (4) placed his hands on her breasts, and (5) ejaculated onto her unclothed body.

¶ 11    In May 2013, a jury found defendant guilty of all counts. In June 2013, the trial court conducted a sentencing hearing. The court sentenced defendant to 15 years in prison on each of the four counts of predatory criminal sexual assault, with the terms to be served consecutively. The court sentenced defendant to six years in prison on three of the counts of aggravated criminal sexual abuse, and four years on the remaining two counts, all to be served concurrently with each other but consecutively to the predatory criminal sexual assault counts. In total, the court sentenced defendant to 66 years in prison.

¶ 12    On direct appeal, defendant argued the State failed to prove him guilty beyond a reasonable doubt on count I and that his sentence was excessive. This court affirmed the conviction and sentence. *Bowald*, 2015 IL App (4th) 130587-U, ¶ 1.

¶ 13                    B.  The Postconviction Petition

¶ 14　　　　In August 2016, defendant *pro se* filed a petition for postconviction relief, asserting five claims. Relevant to this appeal, defendant's fifth claim alleged that his trial counsel provided ineffective assistance by failing to act when defendant and his wife informed trial counsel that one of the jurors was potentially biased. Defendant supported this claim with his own affidavit.

¶ 15　　　　In his affidavit, defendant averred that at the end of jury selection, a woman named "Jenell Keiswetter, received a broadcast message from Juror Kristen Denham-Ward." Keiswetter "forwarded the message" to defendant's wife, who received the message "on her cellphone while sitting in the courtroom." Defendant stated he reviewed the message with his wife "after leaving the courtroom." Defendant then stated in his affidavit as follows:

> "the message was from Ms. Ward to Ms. Keiswetter [and] read that she had been selected to be a juror on the Bowald child sexual abuse case and had many responses attached thereto. Such responses were, *i.e.* 'Hang them all' and 'Hang him.'
>
> My wife and I showed the message to my trial attorney *** as he was going to lunch after the jury selection. However, neither [trial counsel] nor Ms. Ward brought this third party communication to the court's attention."

¶ 16　　　　In his petition, which was verified, defendant argued trial counsel was ineffective for failing to bring the prejudicial third-party communication to the trial court's attention, which denied him his right to a fair and impartial jury. The petition described the affidavit as alleging that Ward "had posted that she had been called to court as a prospected [*sic*] juror for jury duty, and she had some responses that stated: 'Hang him' and 'Hang them all.' " Defendant noted that the trial court had instructed the jury, after they were empanelled, as follows:

"During the course of this trial, do not discuss this case with anyone, not even your family or your friends, or not even amongst yourselves, until at the end of the trial when you've retired to the jury room to deliberate on your verdict. Should anyone speak to you about the case, or try to influence you in any manner before the final disposition of this case, you should report that to me immediately."

¶ 17 Defendant argued Ward "lacked appreciation of her responsibility as a juror to avoid third party communication when she posted her message about being selected as a juror and then refused to inform the court of the responses ***." Defendant further claimed that "Ward posted her message as if she was requesting input as to what her verdict should be," and "this conduct can only imply she didn't follow the court's instructions to not discuss the case during the course of the trial." Defendant contended that the responses Ward received were similar to the statements in *People v. Hobley*, 182 Ill. 2d 404, 696 N.E.2d 313 (1998), in which "Juror Sanchez, in her affidavit 'described that the men "yelled out, Hang the motherfucker." ' "

¶ 18 Later in August 2016, the trial court entered a written order appointing postconviction counsel for defendant. In March 2017, postconviction counsel filed an amended postconviction petition. The amended petition "adopted in its entirety" the previous *pro se* petition. The amended petition did not make any alterations to the original petition or add any materials in support of those claims. Instead, the amended petition added two new claims. Postconviction counsel also filed a Rule 651(c) certificate. See Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

¶ 19 C. The Motion To Dismiss

¶ 20 In May 2017, the State filed a motion to dismiss the amended petition in its entirety. Concerning defendant's fifth claim, the State argued that the claim was "based upon

speculation, and a substantial showing has not been made to establish prejudice to the defendant to show ineffective assistance." Specifically, the State noted that defendant's affidavit was the only documentation to substantiate the claim, and "[t]here [was] no screen shot of the message, there [was] no affidavit from the juror, there [was] not [*sic*] affidavit from any one [*sic*] else regarding this claim." The State also distinguished *Hobley*, noting that "[there,] jurors provided affidavits to proceed to an evidentiary hearing," while in this case defendant only had his own speculative claims.

¶ 21          In June 2017, postconviction counsel filed a response, arguing as follows:

> "The State asks the Court to dismiss this claim stating it is based upon speculation and a substantial showing has not been made. The State then goes onto [*sic*] attack the affidavit attached as not substantiating the claim because no screen shot is attached, nor an affidavit from the juror, or an affidavit from anyone else to corroborate the allegations made by the Defendant. It is clearly alleged that a juror empanelled for the trial was sent messages urging them to condemn the Defendant. It is also clearly alleged that the trial attorney was informed of these messages to the juror and that the attorney did not further investigate or raise any objections to the court about this juror and the statements encouraging condemnation of the defendant to the court. It is also clear that at this stage all pleaded facts as [*sic*] true and bars the court from further fact finding. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). Thus, the State's assertions that this is based upon speculation or is 'highly suspect' are not lawful assertions to dismiss this claim *** and the Defendant requires the Motion to Dismiss as to this claim be denied as well."

¶ 22                                   G.  The Trial Court's Rulings

¶ 23           Later in June 2017, the trial court conducted a hearing on the State's motion to dismiss. The State argued that defendant's affidavit was not sufficient to demonstrate a substantial showing of a constitutional violation. The State asserted that affidavits from jurors were required before defendant was entitled to an evidentiary hearing. The State relied upon *People v. Hobley* in support of its claim.

¶ 24           Regarding claim five, postconviction counsel's argument, in its entirety, was as follows: "I know the State doesn't think that the affidavit of the defendant is sufficient, but it is. Again, stating all claims are true we believe that we made a substantial showing in that claim as well."

¶ 25           The trial court began by emphasizing that at the second stage of postconviction proceedings, the burden was on defendant, not the State, "to make a substantial showing through the petition and the accompanying documentation of a substantial showing of a constitutional violation." Concerning claim five, the court stated as follows:

> "Then we have claim 5 that deals with this juror. It's not 100 percent clear to me—I have looked—on the one hand the defendant's assertion seems to be that this particular juror posted this after the juror was assigned to the case. Let me find it here. In paragraph 51 under that claim it says, 'The particular juror had posted a message that she had been called to court as a prospective juror for jury duty, and she had some responses that stated hang them and hang them all.' So, first of all, there is a huge difference between some banter that goes on for a person who is called generally to report as part of the overall pool of people to be a juror, and—which is what paragraph 51 certainly seems to indicate—and

someone on a particular trial that has been selected and receives that level of communication. But again, it's on—it's on the defense to make a substantial showing. People do everything on Facebook anymore. I mean, they communicate, you know, all the time on Facebook. It is—for someone to say yeah, I am on jury duty, is that now—is the defendant in that case entitled to a mistrial because the juror disclosed they were on jury duty? I mean, isn't that essentially what happened? And then we have no affidavit, we have no evidence of any nature, no supporting documentation whatsoever, that Juror Ward read these comments, that Juror Ward gave any consideration whatsoever to these comments. She—for all we know she laughed them off. For all we know she didn't even read them. But we have nothing to substantiate that this had any impact on the defendant or the outcome of the case.

And further, this is all raised within the confines of an ineffective assistance of counsel claim. It is entirely within the province of [trial counsel] to have chosen to ignore it as to not ruffle the feathers of the jurors by picking on a particular juror, or something. I don't know that. But again, we have no supporting documentation of what occurred or why it occurred. We have his affidavit. We have his affidavit that he had told his counsel, and we have his verified petition that seems to indicate a different perspective on when this occurred.

So just saying that someone said to a juror [']hang them all['], okay, that tells me right there that's not aimed at Mr. Bowald. That's a ridiculous comment aimed at all prospective defendants that maybe this person would hear. And, of course, in Woodford County they could just as easily have a civil case as a

criminal case when they report to jury service. So we don't have a copy of the post. ***

But either way, the juror was told—was properly instructed, was asked if she could be—because I could say this because this is how I do every single trial. They're asked about their willingness to hold the State to their burden, you know. I go through all the required standards with the jury. And she said she could be fair and impartial. So I don't think there is enough there. I don't think you've made a substantial showing of anything as to Juror Ward. That's dismissed."

¶ 26    Ultimately, the trial court determined that an evidentiary hearing was required on only one of defendant's claims and dismissed the rest.

¶ 27    In August 2017, following an evidentiary hearing, the trial court denied defendant's remaining claim.

¶ 28    This appeal followed.

¶ 29                    II. ANALYSIS

¶ 30    Defendant appeals, arguing only that he was denied reasonable assistance of postconviction counsel in violation of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) because (1) the *pro se* petition did *not* make a substantial showing of a constitutional violation and (2) postconviction counsel failed to amend the *pro se* petition to survive second-stage review. In response, the State argues only that defendant's petition stated a complete claim that did not require amendment and does not address the merits of the underlying claim. Under the unique circumstances of this case and based on the framing of the issues by the parties, we conclude counsel failed to comply with Rule 651, but in the interest of judicial economy, we remand for third-stage proceedings.

¶ 31                               A.  The Applicable Law

¶ 32                     1. *Proceedings Pursuant to the Post-Conviction Hearing Act*

¶ 33          The Post-Conviction Hearing Act (Act) provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23, 38 N.E.3d 1256; 725 ILCS 5/122-1 (West 2014). The Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2014). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." *Id.* § 122-2.1 (a)(2). If the court does not dismiss the petition, then it proceeds to the second stage at which the court may appoint counsel for an indigent defendant. *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006).

¶ 34          At the second stage, the trial court appoints counsel who must then investigate defendant's claims and make any amendments necessary for an adequate presentation of defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The State may file a motion to dismiss the petition, and the petition advances to a third-stage evidentiary hearing only if defendant makes a "substantial showing of a constitutional violation." (Internal quotation marks omitted.) *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 22, 99 N.E.3d 1.

¶ 35                      2. *The Substantial Showing Requirement*

¶ 36          The Illinois Supreme Court has described proceedings at the second stage as follows:

> "The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record,

they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767.

¶ 37 To make a substantial showing, "the allegations in the petition must be supported by the record in the case or by its accompanying affidavits." *People v. Coleman*, 183 Ill. 2d 366, 381, 701 N.E.2d 1063, 1072 (1998). "The affidavits that accompany a postconviction petition must identify with reasonable certainty the sources, character, and availability of alleged evidence supporting the petitioner's allegations." *People v. Waldrop*, 353 Ill. App. 3d 244, 249, 818 N.E.2d 888, 893 (2004). A petition "that is not supported by affidavits or other supporting documents is generally dismissed without an evidentiary hearing unless the petitioner's allegations stand uncontradicted and are clearly supported by the record." *Id.*

¶ 38 3. *Ineffective Assistance of Postconviction Counsel*

¶ 39 The right to counsel in postconviction proceedings is statutory rather than constitutional, and, therefore, a defendant is entitled only to the level of assistance guaranteed by the Act. *People v. Greer*, 212 Ill. 2d 192, 203, 817 N.E.2d 511, 518-19 (2004). The Illinois Supreme Court has determined that the Act and Rule 651 require appointed counsel to provide only reasonable assistance, a lower standard than that which the constitution requires at trial. *People v. Kuehner*, 2015 IL 117695, ¶ 15, 32 N.E.3d 655. Rule 651(c) outlines certain duties that postconviction counsel must perform in order to provide reasonable assistance. *Id.* Counsel must

(1) consult with the defendant to determine the issues defendant wants to raise, (2) examine the record of the proceedings in the trial court, and (3) make any amendment to the petition necessary to adequately preserve defendant's contentions. *Id.*

¶ 40    "If the petitioner's claims are based on evidence outside the record, counsel is required to attach affidavits or other evidence to adequately present those claims." *People v. Burns*, 2019 IL App (4th) 170018, ¶ 20, 126 N.E.3d 795. "In the ordinary case, a trial court ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." *People v. Johnson*, 154 Ill. 2d 227, 241, 609 N.E.2d 304, 311 (1993).

¶ 41    The defendant bears the burden of demonstrating that his attorney failed to comply with Rule 651(c). *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23, 955 N.E.2d 1200. The filing of a Rule 651(c) certificate raises a presumption that postconviction counsel adequately investigated, amended, and properly presented the defendant's claims. *Id.* Regardless of whether the claims raised in the petition have merit, remand is required when postconviction counsel fails to comply with Rule 651(c). *People v. Suarez*, 224 Ill. 2d 37, 47, 862 N.E.2d 977, 982 (2007). The appellate court reviews *de novo* whether an attorney complied with Rule 651(c). *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 15, 43 N.E.3d 1077.

¶ 42                                      B.  This Case

¶ 43                              1. *The Arguments of the Parties*

¶ 44    We note that the circumstances of this case are highly unusual, and our resolution of this case is guided by the manner in which the parties have framed the specific issue on appeal. As a result, we begin by setting forth the precise arguments of the parties.

¶ 45       Defendant claims his postconviction counsel provided unreasonable assistance by failing to support his petition with further affidavits. The only evidence supporting defendant's claim regarding a juror's improper third-party communication was defendant's own affidavit. Although postconviction counsel filed an amended petition, he adopted defendant's *pro se* allegations without alteration or any additional documentary support. Defendant argues the *pro se* claim was *insufficient* without more to make a substantial showing of a constitutional violation.

¶ 46       Defendant asserts that postconviction counsel should have presented an affidavit from Ward or other supporting documentation to demonstrate that defendant was potentially prejudiced by Ward's misconduct. Defendant contends that postconviction counsel wrongly believed he could stand on the *pro se* allegations and receive an evidentiary hearing. Because postconviction counsel did not understand what was required to survive second-stage proceedings, defendant claims he was denied effective assistance of postconviction counsel.

¶ 47       In its brief, the State argues only that postconviction counsel was not required to amend defendant's *pro se* petition because the petition and affidavit stated a complete claim. The State does not address whether or not postconviction counsel complied with Rule 651(c) in any other respect. At oral argument, the State clarified that although the petition stated a complete legal claim in appropriate form, it did not make a substantial showing that (1) trial counsel acted unreasonably or (2) that Ward's actions prejudiced defendant.

¶ 48       Ultimately, we agree with defendant in so far as postconviction counsel could have made amendments to the *pro se* petition that would have made clear that defendant was entitled to a third-stage evidentiary hearing. The sole claim that defendant asserts was meritorious is the claim that trial counsel was ineffective for failing to bring to the trial court's attention (1) an instance of juror misconduct and (2) that a juror had potentially been exposed to

prejudicial information. We therefore first set forth the standards for ineffective assistance of trial counsel and then the law applicable to juror misconduct and bias, before examining whether postconviction counsel complied with Rule 651(c) by adequately presenting these claims.

¶ 49                                    2. *The Applicable Law*

¶ 50                            a. Ineffective Assistance of Trial Counsel

¶ 51          To establish a claim of ineffective assistance of trial counsel, the defendant must show that counsel's performance was (1) deficient and (2) prejudicial. *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 61, 115 N.E.3d 1148. A defendant's failure to satisfy either prong negates a claim of ineffective assistance of counsel. *People v. Fellers*, 2016 IL App (4th) 140486, ¶ 23, 77 N.E.3d 994. To establish deficient performance, a defendant must demonstrate that his attorney's performance at trial fell below an objective standard of reasonableness. *Westfall*, 2018 IL App (4th) 150997, ¶ 62. "Matters of trial strategy generally will not support a claim of ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testing." *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 102, 26 N.E.3d 460.

¶ 52          To establish prejudice, a defendant must show that but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Westfall*, 2018 IL App (4th) 150997, ¶ 63. A reasonable probability is a probability which undermines confidence in the outcome of the trial. *Id.* Put another way, the question is whether counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair. *People v. Evans*, 209 Ill. 2d 194, 220, 808 N.E.2d 939, 953-54 (2004).

¶ 53                            b. The Right to an Impartial Jury

¶ 54          A defendant has the right to an impartial and competent jury. *Tanner v. United States*, 483 U.S. 107, 126 (1987). The Illinois Supreme Court has set forth the standard to apply

in situations where a juror communicates with third parties as follows:

> " ' "It is well settled in Illinois that any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial. Although this presumption of prejudice is not conclusive, the burden rests upon the State to establish that such contact with the jurors was harmless to defendant. [Citations.] A verdict will not be set aside where it is obvious that no prejudice resulted from a communication to the jury, either by the court or by third persons outside the presence of the defendant." ' "
> *Hobley*, 182 Ill. 2d at 460, quoting *People v. Mitchell*, 152 Ill. 2d 274, 341, 604 N.E.2d 877, 910 (1992), quoting *People v. Harris*, 123 Ill. 2d 113, 132, 526 N.E.2d 335, 343 (1988).

¶ 55 In *Hobley*, the defendant filed a postconviction petition alleging that his jury was tainted by extraneous outside influences and supported his claim with the affidavits of four jurors. *Id.* at 458-59. The jurors were approached while sequestered by men who "yelled out, 'Hang the motherfucker,' " and other statements about the defendant's guilt. *Id.* at 459. The jurors present were quite upset, and one "was scared and felt that [her] life was in danger." *Id.* Even a juror not present for the incident indicated "the jurors who were present were 'extremely shaken.' " *Id.* The Illinois Supreme Court concluded that the defendant was entitled to a third-stage evidentiary hearing on his claim. *Id.* at 462.

¶ 56 By contrast, in *People v. Williams*, 209 Ill. 2d 227, 234, 807 N.E.2d 448, 453 (2004), postconviction counsel presented the affidavit of one juror, who related that another juror " 'had a conversation' with her husband about one of the issues in the case. When a third juror commented that they had been instructed not to discuss the case with others, she responded that

it was 'hard not to.' " The defendant argued to the supreme court that "the unidentified juror's conversation with her husband about an issue in the case, in violation of the judge's instructions, is a similar improper extraneous contact [to the one present in *Hobley*.]" *Id.* at 241. The supreme court disagreed stating, "The lesson of *Hobley* is that a juror affidavit alleging exposure to '*prejudicial* outside influences' [citation], is sufficient to raise a presumption of prejudice and to shift the burden to the State to establish that such contacts were harmless." (Emphasis in original.) *Id.* (quoting *Hobley*, 182 Ill. 2d at 459). The supreme court concluded that even viewing all of the statements in the juror's affidavit in the light most favorable to the defendant, he failed to make a substantial showing of a constitutional deprivation. *Id.* at 242.

¶ 57         3. *Postconviction Counsel Was Required To Amend Defendant's Claim*

¶ 58         In this (highly unusual) case, defendant's postconviction claim more accurately centers on juror misconduct or bias than ineffective assistance of counsel. As a result, postconviction counsel could have cleared up a number of issues for the trial court that would have clearly demonstrated that defendant was entitled to a third-stage evidentiary hearing. Because defendant frames the issue solely as one of whether postconviction counsel failed to comply with Rule 651(c), and because the State argues only that the *pro se* petition stated a complete claim, we conclude that postconviction counsel acted unreasonably by failing to make simple amendments that would have resulted in the trial court's advancing the petition to a third-stage hearing.

¶ 59         First, the trial court was confused regarding whether Ward made her post during jury selection or after she had been seated as a juror, as indicated by its comments regarding claim five at the hearing on the motion to dismiss. At oral argument, defendant asserted this timing issue was a crucial distinction because if Ward made the post after the court instructed her not to discuss the case, she demonstrated an inability or unwillingness to follow the trial court's

- 16 -

clear instructions. Similarly, the trial court informed jurors to report if any person attempted to influence their decision, and Ward did not report the responses she received to her post. A defendant may state a claim of juror misconduct if the juror's actions "involve[s] flagrant misconduct bearing directly on the fairness of the defendant['s trial.]" *People v. Cloutier*, 178 Ill. 2d 141, 162, 687 N.E.2d 930, 939 (1997).

¶ 60　　　　Here, Ward's conduct can only be "misconduct" if she made her post *after* the trial court instructed her not to (and likewise failed to report the improper responses (potentially) attempting to influence her decision). The conflict between the timing stated in defendant's verified petition versus that in his affidavit was clear on the face of the pleading. Postconviction counsel could have resolved the ambiguity simply by amending the petition to make the allegations in the petition consistent with those in defendant's affidavit, which stated Ward acted after she was seated as a juror and instructed by the court.

¶ 61　　　　Additionally, postconviction counsel could have attached further affidavits to corroborate defendant's claims and demonstrate prejudice. Defendant's affidavit clearly identified three people with further information about the alleged misconduct: (1) defendant's wife, (2) Keiswetter, and (3) Ward. Any one of these persons could have described the allegedly prejudicial communications, how they were transmitted, and further information about those communications, such as who wrote the allegedly prejudicial responses and whether those responses were intended to influence Ward. They also could have helped counsel locate and provide documentation of Ward's initial communication and any responses thereto. Such documentation may have demonstrated whether Ward replied to the messages or otherwise indicated that she read them. Most importantly, only Ward could say whether the responses did, in fact, influence her.

¶ 62　　　　However, nothing in the record indicates that postconviction counsel attempted to

contact any of these people or obtain a copy of Ward's initial communication or the responses. Instead, counsel argued he was not required to do anything because the petition was sufficient on its own. In *Waldrop*, 353 Ill. App. 3d at 249, the Second District reversed the second-stage dismissal of the defendant's postconviction petition because counsel "mistakenly believed that he did not have a duty to seek an affidavit from the witness specifically identified in defendant's *pro se* petition." *Id.* at 250. Postconviction counsel failed to comply with Rule 651(c) because, "[a]t a minimum, counsel was obligated to attempt to obtain evidentiary support for claims raised in the *pro se* petition." *Id.* at 251.

¶ 63        In this case, the record supports the contention that postconviction counsel did not understand what was required of him under the Act. Postconviction counsel could have, and should have, (1) amended the petition to clarify the timing discrepancies, (2) presented a copy of Ward's communication and the allegedly prejudicial responses, (3) provided affidavits from Ward, Keiswetter, or defendant's wife, or (4) explained why such actions could not have been taken. Counsel's failure to take any of these steps here is all the more glaring given that the State, in its motion to dismiss, specifically argued the petition should be dismissed because it lacked (1) corroborating affidavits, (2) a copy of the post or responses, and (3) an affidavit from Ward. See *People v. Turner*, 187 Ill. 2d 406, 414, 719 N.E.2d 725, 729-30 (1999) (explaining counsel's failure to attach affidavits was particularly concerning because he responded to State's motion to dismiss by noting the claims were based on evidence outside of the record on direct appeal) Given our lack of confidence that counsel understood he needed to take these steps and his failure to take them, we conclude he failed to comply with Rule 651.

¶ 64        Ordinarily, we would remand the case for postconviction counsel to comply with Rule 651. However, because this case centers on whether Ward was exposed to prejudicial

outside information or otherwise engaged in misconduct, we conclude judicial economy is best served by the trial court conducting a third-stage evidentiary hearing giving defendant the opportunity to prove his claim. We make clear that we express no opinion on the ultimate merits of defendant's claim.

¶ 65                                    III. CONCLUSION

¶ 66            For the reasons stated, we reverse and remand for third-stage proceedings.

¶ 67            Reversed and remanded.