2020 IL App (1st) 171923
No. 1-17-1923
Opinion filed December 31, 2020

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 01 CR 27398 |
| v. | ) ) ) | The Honorable Allen F. Murphy, |
| XAVIER EDGECOMBE, | ) ) | Judge, presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Xavier Edgecombe was found guilty after a jury trial of the first degree murder of Jerome Anderson and the attempted first degree murder of Antwon Walker. Defendant received a 45-year sentence for the murder and a consecutive 6-year sentence for the attempted murder, for a total of 51 years with the Illinois Department of Corrections (IDOC).

¶ 2 Defendant currently appeals the second-stage dismissal of his postconviction petition. In his petition, defendant alleges that the trial court violated his right to a public trial by discussing a jury note in his absence. In a prior appeal, the State conceded that defendant was,

in fact, absent during both the discussion of and response to the jury note. *People v. Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 2.

¶ 3    This court previously reversed the first-stage dismissal of his petition, finding (1) that defendant's petition stated "the gist of a constitutional claim by alleging that he was absent during the reading [of] and response to a jury note concerning the pivotal issue in his case" and (2) that "his appellate counsel was arguably ineffective for failing to raise this issue where the trial court failed to follow the committee notes in delivering the jury instruction on this same issue." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 1. As a result, we found that the trial court erred in dismissing defendant's postconviction petition and remanded for second-stage proceedings. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 1.

¶ 4    Since defendant admitted at trial to shooting both Anderson and Walker, we found that "the only issues at trial were self-defense and second-degree murder." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 3.

¶ 5    We also found that "defendant's conviction for attempted murder is not at issue" in this postconviction proceeding, for the following reason. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 5. "The sole issues raised by defendant *** concern the jury note that asked the trial court to clarify what constituted an 'unreasonable' belief in the need for self-defense, which could reduce a charge of first-degree murder to second-degree murder." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 5. "Since the only conviction that could have possibly been affected by this note was the murder conviction, defendant's remaining conviction for attempted murder is not at issue" in this postconviction proceeding. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 5.

¶ 6    Now, reviewing the trial court's second-stage dismissal, we affirm, for the reasons that we explain below.

¶ 7                                BACKGROUND

¶ 8                              I. Evidence at Trial

¶ 9        In our prior order, we observed that defendant conceded the following facts as established at trial:

> " 'On October 17, 2001, [defendant] was beaten up by Reggie Anderson[1] and five of Reggie [Anderson]'s friends, in the presence of [defendant]'s girlfriend, Georgina Harris. The incident occurred at the intersection of 11th and Woodlawn in Chicago Heights. The precipitating event was an argument between [defendant] and Reggie Anderson's friend, Antwon Walker, over an allegedly stolen dog. The fight was broken up by Reggie Anderson's brother Jerome, at the request of Harris.
>
> The next day, [defendant] decided to settle his dispute with Reggie Anderson. He and Harris drove to the home of an acquaintance, where they met with [defendant]'s cousin, John Coleman. [Defendant] asked Coleman to obtain a firearm for him. Later that day, Coleman pulled up his car besides [defendant]'s car and turned over a .22 caliber semi-automatic rifle.
>
> [Defendant] drove to 11th and Woodlawn. Coleman followed in his vehicle. Jerome Anderson, Reggie Anderson, and Antwon Walker were present, as were several other people. [Defendant] directed Harris to open her window and recline her seat all the way back. He then fired several shots, and struck both Jerome Anderson and Walker. Jerome Anderson died of his wounds. [Defendant] then drove away, first crashing his car into a parked vehicle. As he drove away, [defendant] fired several more shots out the front

---

[1]Since Reggie Anderson shares the same last name as Jerome Anderson, who is his brother and the murder victim, we include his first name.

passenger side window. He then instructed Harris to throw the firearm out the window.

***

On October 21, [defendant] was interviewed by Detective Patrick Foley. [Defendant] admitted that he shot Anderson and Walker, adding that before he fired his gun, he saw somebody named Marcello Hatten (a.k.a. "Gooky") reach into his jogging suit. However, [defendant] also told Foley that he never saw anything in Hatten's hands.' " *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 10.

¶ 10   In his defense, defendant testified at trial that, immediately prior to the shooting, he stopped his vehicle on 11th Street beside a green van, that Hatten emerged from the van and pointed a black semiautomatic handgun at defendant, and that, in fear for his life, defendant lifted his gun and started shooting. Defendant testified that his initial shots were in self-defense against Hatten and that his final two shots were in the air, in an effort to disperse the crowd. See *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 11.

¶ 11                                   II. Jury Note

¶ 12   At trial, the court's jury instructions included instructions on both self-defense and second degree murder. We provide below the trial court's instruction regarding second degree murder, because the jury note at the heart of this appeal concerned second degree murder and defendant argues that the second degree murder instructions left the jurors confused:

"You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have determined that the State has proved beyond a reasonable doubt each of the previously stated propositions.

The defendant has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree

4

murder instead of first degree murder. By this, I mean that you must be persuaded, considering all the evidence in this case, that it is more probably true than not true that the following mitigating factor is present: that the defendant, at the time he performed the acts which caused the death of Jerome Anderson, believed the circumstances to be such that they justified the deadly force he used, but his belief that such circumstances existed was unreasonable."

The trial court read the instructions aloud to the jury and provided written instructions to the jury during its deliberations.

¶ 13        During its deliberations, the jury submitted the following note to the trial court:

"Can we get someone to give us some clarity around 'mitigating* factor'? We find the language in the instructions to be confusing.

(*) See underlined portion of instructions."

¶ 14        This jury note was accompanied by the jury instruction on second degree murder. The jury circled and starred the portion that we quote below:

"By this, I mean that you must be persuaded, considering all the evidence in this case, that it is more probably true than not true that the following mitigating factor is present: that the defendant, at the time he performed the acts which caused the death of Jerome Anderson, *believed the circumstances to be such that they justified the deadly force used, but his belief that such circumstances existed was unreasonable*."

The part emphasized above is the same portion that the jury underlined.

¶ 15        There is no transcript of the discussion of the jury note in the appellate record. The trial transcript indicates that, after the jury retired to deliberate, the trial court and counsel discussed what exhibits would be allowed back in the jury room. A recess occurred immediately after

this discussion concerning the exhibits. The next event in the trial transcript is the trial court's gathering of the parties for the announcement of the jury verdict.

¶ 16    Although the record does not contain a transcript of the discussion regarding the note, the State conceded in its prior appellate brief to this court that defendant was, in fact, absent during the reading of this note and its discussion. Similarly, in its present appellant brief, the State again concedes: "Petitioner was absent."

¶ 17    Although defendant was absent, the record indicates that defendant's trial counsel was present during the reading and discussion of the jury note.[2] On the back of the jury note concerning unreasonable belief, the trial court wrote: "I cannot further define it. Please continue to deliberate. Judge Donnelly." Next, the jury sent out a second note, which is not at issue in this appeal.[3]

¶ 18    The jurors' note concerning unreasonable belief was sent out at 4:25 p.m., and a verdict was returned at 5:05 p.m.[4]

¶ 19                                    III. Procedural History

¶ 20    On January 21, 2005, defendant was found guilty of the first degree murder of Jerome Anderson, the attempted first degree murder of Antwon Walker, and the aggravated battery with a firearm of Antwon Walker. The jury also found that, during the commission of the

---

[2]The record shows that, during a hearing on a posttrial motion, defendant's then counsel argued that "both trial counsel" would state that defendant was not present and that only "the State, the Court and his trial counsel were present." Although the defense counsel who argued the posttrial motion was not defendant's counsel at trial, both the trial judge and the prosecutor were present at trial, and they did not correct him.

[3]The second note stated: "Can we get the transcribed notes?" On the back of this note, the trial court wrote: "We do not have all the transcripts. Are you looking for something in particular? Please let me know. Judge Donnelly." Underneath the judge's note, the jury apparently wrote back "John Coleman [and] Chyna Higgins," who were two of the State's witnesses at trial.

[4]We know the times of these events because, during a hearing on August 31, 2006, concerning defendant's posttrial motion, the prosecutor, who was present during defendant's trial, stated that the jurors sent out this note at 4:25 p.m. and returned a verdict at 5:05 p.m.

murder, defendant personally discharged the firearm that proximately caused the death of Jerome Anderson.

¶ 21    On February 16, 2005, the trial court orally sentenced defendant to 55 years for murder and to two concurrent sentences of 25 years each for attempted murder and aggravated battery with a firearm. The murder sentence was to run concurrently with the sentences for attempted murder and aggravated battery, resulting in an aggregate sentence of 55 years with IDOC.

¶ 22    However, the mittimus, which was entered the same day, ordered an aggregate sentence of 80 years because it did not state that the murder and attempted murder sentences were to run concurrently.

¶ 23    In a *pro se* posttrial motion for a new trial, filed March 14, 2005, defendant claimed that his trial counsel was ineffective, among other things, for failing to call Hatten, who defendant alleged had been listed as a potential State witness, and Quinn Lee,[5] who defendant alleged was present during the trial and who would have "buttress[ed]" defendant's testimony that defendant acted in self-defense.

¶ 24    In a posttrial motion for a new trial, filed by new counsel on August 30, 2006, defendant raised a number of claims, including claims that the trial court erred by failing to answer the jury's question about unreasonable belief and by failing to have defendant physically present for discussion of the note. On August 30, 2006, the trial court denied defendant's posttrial motion for a new trial, and on August 31, 2006, defendant filed a notice of appeal.

_____

[5]The evidence at trial established that, prior to the shooting, as defendant drove down 11th Street toward Woodlawn Avenue, his vehicle was followed by a vehicle driven by Coleman, as well as by a vehicle driven by Quinn Lee. See *People v. Edgecombe*, No. 1-06-2571 (2008) (unpublished order under Illinois Supreme Court Rule 23), slip order at 3-4.

¶ 25    On the instant appeal, defendant is claiming that his counsel on his direct appeal was ineffective.

¶ 26    On his direct appeal, his counsel raised one claim: that his trial counsel was ineffective for failing to move the trial court to instruct the jury on the lesser-included offenses of involuntary manslaughter and reckless discharge of a firearm. *People v. Edgecombe*, No. 1-06-2571 (2008) (unpublished order under Illinois Supreme Court Rule 23), slip order at 2. We did not find this claim persuasive because a defendant is entitled to an instruction on these lesser-included offenses only if there is some evidence of reckless conduct (*Edgecombe*, No. 1-06-2571, slip order at 19), and we found "the evidence indicates that the shootings were not the product of recklessness" (*Edgecombe*, No. 1-06-2571, slip order at 20). Thus, we affirmed defendant's convictions in an unpublished order filed on May 12, 2008. *Edgecombe*, No. 1-06-2571, slip order at 24.

¶ 27    On May 18, 2009, defendant filed a *pro se* postconviction petition, which the trial court dismissed on August 7, 2009, at the first stage, as frivolous and patently without merit. The trial judge who heard and decided his postconviction claims was not the same judge who had presided over defendant's trial and sentencing. Defendant filed a notice of appeal on September 10, 2009.

¶ 28                               IV. Resentencing

¶ 29    The briefs filed in the appellate court, after the first-stage dismissal, indicated that the parties were confused about whether defendant's sentences ran concurrently or consecutively. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 30. The State's brief asserted a cumulative sentence of 55 years, while the defendant's brief asserted a substantially longer cumulative sentence of 80 years. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 35. The parties' confusion

stemmed from the fact that, while the trial court's oral pronouncement was that the sentences were to run concurrently for a total of 55 years, the mittimus ordered a total of 80 years. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶¶ 31-32.

¶ 30        As a result, on June 30, 2011, this court remanded the case for resentencing. *People v. Edgecombe*, 2011 IL App (1st) 092690, ¶ 5; see also *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 5. Prior to remanding, we observed: "Our action today does not affect the claims that defendant made concerning the jury note. Since defendant may decide not to pursue these claims depending on the outcome of his resentencing, it is in the interest of judicial economy for us not to address these claims prematurely." *Edgecombe*, 2011 IL App (1st) 092690, ¶ 31; see also *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 47.

¶ 31        On remand, the trial court sentenced defendant to a 45-year sentence for murder and a consecutive 6-year sentence for attempted murder. The resulting total of 51 years was four years less than defendant's original sentence. Defendant also filed a *pro se* posttrial motion alleging essentially the same claims that he had made in his *pro se* postconviction petition, which the trial court denied. Defendant appealed.

¶ 32                              V. Our Prior Order

¶ 33        On the appeal after the resentencing, we found that "the issue before us is whether defendant's postconviction petition raised an arguably meritorious constitutional claim and whether the trial court thus erred by summarily dismissing it" at the first stage. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 51.

¶ 34        On December 27, 2013, in a two-to-one decision, this court reversed the trial court's first-stage dismissal for the following reasons:

9

"First, defendant had a right to be present at the discussion of the jury note and the State concedes that he was not present. Second, since the trial court failed to discuss the jury note on the record, we do not know whether defendant's counsel objected either to his absence or to the trial court's response to the note. All the parties concede that counsel were present.

Third, the trial court erred by failing to provide the jury instructions in the manner specified by the committee's notes to the Illinois Pattern Jury Instructions, and the jury's note showed confusion about the same point. Fourth, the trial court's response, or failure to respond to the jury's question, appeared to be the pivotal moment of the case, since the jury returned with a verdict only 40 minutes later.

Lastly, we observe that the circuit judge's summary dismissal was based, in part, on the erroneous assumption that the discussion of the jury note was on the record." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶¶ 108-10.

¶ 35 "We also observe[d] that this was the same appellate counsel who failed to raise a 25-year discrepancy between the sentence ordered and the sentence as described in the mittimus." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 105.

¶ 36 One justice respectfully dissented and would have found, among other things, that defendant had failed to show "any prejudice so as to warrant second stage review." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 115 (McBride, J., dissenting). The dissent observed that there was no evidence at trial, other than defendant's testimony, that anyone else had a gun "that night." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 144. However, a majority of this court decided to remand, thereby providing defendant with the benefit of counsel who could

supplement his *pro se* petition, as needed, on issues such as prejudice and prior counsel's alleged deficiencies. See *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 106 (majority opinion).

¶ 37                                          VI. Second Stage Dismissal

¶ 38          On remand, counsel was appointed. However, on September 8, 2015, the public defender was granted leave to withdraw when defendant retained private counsel. Defendant's private counsel filed an amended petition on November 18, 2016, which stated that it "augment[ed]" defendant's previously filed *pro se* postconviction petition. The amended petition stated that it "incorporate[d]" the affidavits that defendant previously attached to his 2009 petition, but it did not attach additional documents or affidavits. Counsel argued that defendant's due process rights were violated by both his absence during the discussion of the jury note and the trial court's failure to answer the jury's question and that appellate counsel was ineffective by failing to argue both defendant's absence and the trial court's failure to answer. On November 18, 2016, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) stating that she had consulted with defendant, examined the record of the trial proceedings, and amended the previously filed *pro se* petition.

¶ 39          Several months later, defendant filed a *pro se* supplemental petition, dated February 24, 2017,[6] which largely cut and pasted its sections on "Facts" and "Procedural History" from counsel's amended petition. However, the *pro se* supplemental petition included claims (1) that defendant was denied due process "when the trial court failed to provide jury instructions in the manner specified by the committee's note to the Illinois Pattern Jury Instructions," (2) that appellate counsel was ineffective for failing to argue that trial counsel

---

[6]Although dated earlier, the petition was not filed in the circuit court clerk's office until March 2, 2017.

was ineffective for failing to object to this instructional error, and (3) that the trial judge during his resentencing erred by including a 25-year firearm enhancement. The *pro se* supplemental petition also did not attach additional documents or affidavits.

¶ 40    On March 3, 2017, the State filed a second-stage motion to dismiss that addressed both defendant's original *pro se* petition and counsel's amended petition. In its motion, the State argued, among other things, that "[a]ll the allegations against trial counsel for failing to call Quinn Lee and Marcello Hatten should be dismissed for failing to provide support for those witnesses." The State argued that it was "pure speculation" as to what Lee and Hatten "would have testified [to] because there is no support attached to the petition in the way of affidavits." In addition, the State argued, that defendant failed to show any prejudice when there is no evidence, besides his own testimony, that anyone besides defendant had a gun that night.

¶ 41    Defendant's counsel filed a response to the State's motion, which argued that prejudice was shown by "the jury's confusion regarding the jury instructions."

¶ 42    With respect to the issue before us, the trial court found, first, that the jurors did not ask "for a definition of what an unreasonable or reasonable belief is" but rather they stated that they found the instruction confusing. The trial court remarked:

> "Well, you know what? Many criminal practitioners find that confusing, too. That's a fact.
>
> The second degree instruction is a slippery fish. Not everybody gets it: because before you determine whether there is an unreasonable belief in the need for self-defense, first of all you have to determine whether the defendant had an actual subjective belief that deadly force was needed.

For example, if the jury determined this was just a drive-by shooting, bye, bye, second degree."

¶ 43    The trial court found that, even if defendant had been present and even if he had objected to the trial court's response, "the result would have been the same," in that the trial court would have responded the same way.

¶ 44    The trial court granted the State's second-stage motion to dismiss on July 7, 2017, and defendant filed a notice of appeal on the same day. This timely appeal followed.

¶ 45                                    ANALYSIS

¶ 46    On this appeal, defendant raises one claim: that he should be granted a third-stage evidentiary hearing on the question of whether the counsel on his direct appeal was ineffective for failing to argue that the trial court violated defendant's constitutional right of presence by responding, in defendant's absence and incorrectly, to a jury note requesting clarification on an important question of law.

¶ 47    In response, the State argues that the trial court properly granted its second-stage motion to dismiss because defendant failed to make a substantial showing of a claim of ineffective assistance of appellate counsel. The State argues that appellate counsel's performance was not objectively unreasonable and that defendant suffered no prejudice where the evidence of his guilt was overwhelming.

¶ 48    In his reply brief, defendant observes that the issue was properly preserved by his posttrial counsel and, thus, the State would have had to show on direct appeal that the error was harmless beyond a reasonable doubt. Also, to obtain a second degree murder verdict, defendant had to prove only by a preponderance of the evidence that he held a subjective, although unreasonable, belief in the need for deadly force. Defendant observes that he testified

at trial denying that he told his girlfriend to roll down the front-passenger window of their vehicle and to lean back and denying that he told a detective that, although he observed Hatten reach inside his jogging suit, Hatten had nothing in his hand. Defendant's girlfriend testified that, immediately prior to firing the rifle, defendant was in the process of placing it on the floor under her seat, when he looked up, lifted the rifle, and fired four or five shots out of her passenger-side window. She testified that, after the shooting, defendant told her that he believed someone else on the street was shooting. See also *Edgecombe*, No. 1-06-2571, slip order at 6.

¶ 49 For the following reasons, we affirm the second-stage dismissal.

¶ 50 I. Postconviction Stages

¶ 51 Defendant seeks relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 52 At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 53 If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-

stage evidentiary hearing, the trial court acts as fact finder, determines witness credibility and the weight to be given particular testimony and evidence, and resolves any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34. On this appeal, defendant is seeking a third-stage evidentiary hearing.

¶ 54                                    II. The Second Stage

¶ 55          Defendant's petition was dismissed at the second stage. The issue at the second stage is whether the petitioner made a substantial showing such that an evidentiary hearing is warranted. *People v. Sanders*, 2016 IL 118123, ¶ 37. At the second stage, the allegations in the petition are "liberally construed in favor of the petitioner." *Sanders*, 2016 IL 118123, ¶ 31. "All well-pleaded factual allegations must be taken as true ***." *Sanders*, 2016 IL 118123, ¶ 37. "[T]here are no factual issues" at the second stage. *Sanders*, 2016 IL 118123, ¶ 31. "Credibility determinations may be made only at a third-stage evidentiary hearing." *Sanders*, 2016 IL 118123, ¶ 42.

¶ 56          At the second stage, a court considers only the proofs attached by defendant to his petition and the record of his original trial proceedings. *Sanders*, 2016 IL 118123, ¶¶ 45, 48. The Act requires a petitioner to attach to his petition "affidavits, records, or other evidence supporting the petition's allegations or state why the same are not attached." *Sanders*, 2016 IL 118123, ¶ 45 (citing 725 ILCS 5/122-2 (West 2014)). The court must accept as true both the petition's allegations and its supporting evidence "unless they are positively rebutted by the record of the original trial proceedings." *Sanders*, 2016 IL 118123, ¶ 48.

¶ 57          When no evidentiary hearing is held, a reviewing court's standard of review is *de novo*. *Sanders*, 2016 IL 118123, ¶ 31 (a second-stage dismissal is reviewed *de novo*). *De novo*

consideration means that we will perform the same analysis that a trial judge would perform. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 107.

¶ 58                                    III. *Strickland* Test

¶ 59          Defendant's sole claim is that his appellate counsel was ineffective.

¶ 60          To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the familiar two-prong *Strickland* test: (1) that his counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶ 61          Combining both the standard for a second-stage dismissal with the standard for ineffective assistance of counsel, a defendant at this stage must make (1) a substantial showing that counsel's performance was objectively unreasonable under prevailing professional norms and (2) a substantial showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Domagala*, 2013 IL 113688, ¶ 36.

¶ 62          "A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376 (2000).

¶ 63          Although the *Strickland* test is a two-prong test, our analysis may proceed in any order. To prevail, a defendant must satisfy *both* prongs. *People v. Colon*, 225 Ill. 2d 125, 135 (2007); *People v. Evans*, 209 Ill. 2d 194, 220 (2004). Thus, if a defendant cannot satisfy one prong, no further analysis is needed. *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 64          "The *Strickland* standard applies equally" to claims concerning trial and appellate counsel. *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). If a defendant claims that appellate

counsel was ineffective for failing to raise a claim of trial error, a defendant must show not only that appellate counsel's performance was deficient but also that there is a reasonable probability that the underlying claim of trial error would have succeeded on direct appeal. *Petrenko*, 237 Ill. 2d at 497. If the underlying claim would not have succeeded on direct appeal, then "there is no arguable legal basis" for defendant's claim of ineffective assistance of appellate counsel, and "summary dismissal of his *pro se* postconviction [petition]" is "proper." See *Petrenko*, 237 Ill. 2d at 501-02.

¶ 65                                    IV. No Forfeiture

¶ 66        In considering whether defendant's appellate counsel was ineffective for failing to raise defendant's right to be present, we find that this court[7] would most likely have applied a harmless-error review to this claim on direct appeal.

¶ 67        Whether a reviewing court applies harmless-error review depends on whether the defendant forfeited review of the issue in the court below. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). To preserve an alleged error for review, a "defendant must both specifically object at trial and raise the specific issue again in a posttrial motion." *People v. Woods*, 214 Ill. 2d 455, 470 (2005); *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007).

¶ 68        In the case at bar, we do not know whether defendant's trial counsel objected to defendant's absence because the discussion occurred off the record. As a result, we cannot say that defendant's trial counsel failed to preserve the issue with a contemporaneous objection. We do know that the issue was raised in a posttrial motion. Thus, we found in our prior order

_____

[7]The author of the order that decided the direct appeal is the same author of the instant opinion.

on this issue that "the claimed error was not forfeited and was preserved for appellate review." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 89.

¶ 69    "Since it was preserved, the appellate court would have applied to the claim—if it had been raised—a harmless-error review." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 90. Thus, the burden would have been on the State "to prove beyond a reasonable doubt that no prejudice occurred." *People v. McLaurin*, 235 Ill. 2d 478, 494-95 (2009).

¶ 70                                         V. Second Degree Murder

¶ 71    Defendant claims that the trial court erred by failing to respond properly, in his absence, to a jury note that the jury instruction for second degree murder was "confusing."

¶ 72    A person commits second degree murder when he or she commits first degree murder and one of two mitigating factors is present. *People v. McDonald*, 2016 IL 118882, ¶ 59. The first factor is an unreasonable belief in the need for self-defense. *McDonald*, 2016 IL 118882, ¶ 59. The second mitigating factor is a sudden and intense passion resulting from a serious provocation. *McDonald*, 2016 IL 118882, ¶ 59. In the case at bar, the jury was instructed on the first factor.

¶ 73    When a defendant is on trial for first degree murder and evidence of either mitigating factor has been presented, the burden of proof is on the defendant to prove the mitigating factor by a preponderance of the evidence. 720 ILCS 5/9-2(c) (West 2018); *People v. Manning*, 2018 IL 122081, ¶ 3. However, the burden of proof always remains on the State to prove the elements of first degree murder beyond a reasonable doubt. 720 ILCS 5/9-2(c) (West 2018); *Manning*, 2018 IL 122081, ¶ 3. A jury must be instructed that it may not consider whether a defendant has met his proof with regard to second degree murder, until and unless it has first

determined that the State has proven the elements of first degree murder beyond a reasonable doubt. *Manning*, 2018 IL 122081, ¶ 18.

¶ 74                                    VI. Right to Be Present

¶ 75         Defendant claims that his absence during the discussion of a jury note violated his constitutional right of presence.

¶ 76         Under both the Illinois Constitution and the United States Constitution, a criminal defendant has the "right to a public trial, and to appear and participate *in person and by counsel* at all proceedings that involve his substantial rights." (Emphasis in original). *People v. McDonald*, 168 Ill. 2d 420, 459 (1995) (citing U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8).

¶ 77         In the early part of the twentieth century, it was the law in Illinois that, if a trial court responded in the defendant's absence to a note from the jury, a reviewing court would not even inquire into the correctness of the instruction given. *People v. McGrane*, 336 Ill. 404, 409 (1929) ("Inquiry will not be made into the correctness of an instruction given ***."); *People v. Childs*, 159 Ill. 2d 217, 227 (1994) ("For many years, it was a strict rule ***).

¶ 78         Although jury deliberations are still considered "a critical stage of the trial affecting a defendant's substantial rights" (*McDonald*, 168 Ill. 2d at 459), the current right to be present is neither absolute nor inflexible. *McLaurin*, 235 Ill. 2d at 491; *Childs*, 159 Ill. 2d at 227 ("the rule has judicially evolved"). Under current Illinois law, a defendant's right of presence is violated only when his absence impaired an underlying substantial right, such as the right to present a defense. *McLaurin*, 235 Ill. 2d at 490-91.

¶ 79         For example, a defendant's exclusion from a discussion of jury notes does not violate his constitutional right to be present if "the jury notes were all either straightforward requests

for portions of testimony or notes claiming that the jury was 'deadlocked.' " *McLaurin*, 235 Ill. 2d at 491. However, "a defendant has an absolute right to be informed of any jury question involving a question of law and to be given the opportunity to participate for his protection in fashioning an appropriate response." *Childs*, 159 Ill. 2d at 234. Thus, where a jury note asked whether convicting defendant of armed robbery meant that the jury also had to find him guilty of murder, rather than manslaughter, and the trial court responded in the defendant's absence and failed to clarify, the court's response was "improper" and required reversal. *Childs*, 159 Ill. 2d at 225, 234-35.

¶ 80    As we noted in our prior order on this matter, "[t]he job of an appellate court" is "to draw the line between those instances, like *McLaurin*, where the right was not violated; and those instances where it was." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 81.

¶ 81    In *McLaurin*, 235 Ill. 2d at 491, our supreme court found that, "[a]lthough defendant argues that he could have given input into the trial court's answers to the jury notes, *it is significant* that he does not argue that the substance of any of the responses was improper." (Emphasis added.) By contrast, in the case at bar, this court already found that the response was improper, as we explain below.

¶ 82                    VII. Trial Court Error

¶ 83    In our prior order, we set forth the ways in which the trial court erred:

"First, the trial court erred by failing to provide the jury instructions in the manner specified by the committee's notes to the Illinois Pattern Jury Instructions, and the jury's note showed confusion about the same point. ***

In its note, the jury underlined the words in Illinois Pattern Jury Instructions, Criminal, No. 7.06 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 7.06) which

20

concerned defendant's 'unreasonable' belief in the need for deadly force. The committee note to this instruction states: 'When an affirmative defense instruction is to be given, *combine* this instruction with the appropriate instruction from Chapter 24-25.00.' (Emphasis added.) IPI Criminal 4th No. 7.06, Committee Note, at 207. In the case at bar, the affirmative defense instruction was IPI Criminal 4th No. 24-25.06, 'Use of Force in Defense of a Person.' Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (4th ed. 2000).

Combining these two instructions makes a lot of sense, since IPI Criminal 4th No. 7.06 concerns an unreasonable belief, while IPI Criminal 4th No. 24-25.06 concerns a reasonable belief. When the two instructions are placed side by side, each one adds clarity to the other. See [*People v. Rodriguez*, 336 Ill. App. 3d 1, 17 (2002)] (the only distinction between second degree-murder and self-defense is whether defendant's belief in the need for force was reasonable or unreasonable).

The sample sets of instructions at the end of the pattern instructions make clear that the word 'combine' means to read the two instructions side by side. There are two sample sets that contain both IPI Criminal 4th No. 7.06 and affirmative defense instructions. IPI Criminal 4th Sample Set 27.01 at 463; IPI Criminal 4th Sample Set 27.05 at 518. In both sets, the affirmative defense instructions appear either immediately before or immediately after IPI Criminal 4th No. 7.06.

By contrast, in the case at bar, the trial court did not 'combine' the instructions, as the committee note required, but rather it tacked the affirmative defense instruction to the end of an instruction for a different offense. Ill. S. Ct. R. 451(a) (eff. July 1, 2006) (trial court must use Illinois Pattern Jury Instructions, if accurate and applicable).

21

Second, when the jury sent out its note indicating its confusion about what constituted an 'unreasonable' belief in the need for deadly force, the trial court erred by choosing to conduct the discussion of the note, off the record and out of the presence of defendant. We do not know how, or if, trial counsel asked the trial court to respond, since we lack a transcript of the discussion. *Childs*, 159 Ill. 2d at 234 ('because jury deliberations are a critical stage of trial affecting substantial rights, a defendant has an absolute right to be informed of any jury question involving a question of law and to be given the opportunity to participate for his protection in fashioning an appropriate response'); *McDonald*, 168 Ill. 2d at 459 ('a communication between the judge and the jury after the jury has retired to deliberate, except one held in open court and in defendant's presence, de[p]rives defendant of those fundamental rights' to appear and participate).

Third, the trial court erred by refusing to answer the jury's specific legal question concerning the meaning of a defendant's 'unreasonable' belief in the need for deadly force. See *Childs*, 159 Ill. 2d at 228-29 (the trial court has 'a duty' to respond to a jury note that 'requested clarification on a point of law'). As the committee note required, the trial court could have read, side by side, the two instructions concerning reasonable belief and unreasonable belief. Since defendant had already confessed to the shooting, the jury's understanding of what constituted a reasonable, as opposed to an unreasonable, belief in the need for deadly force governed the outcome of the only two issues in the murder case—self-defense and second-degree murder. *Childs*, 159 Ill. 2d at 229 (the trial court's duty to respond is particularly important when the jury note

'manifested juror confusion on a substantive legal issue')." *Edgecombe*, 2013 IL App (1st) 120766-U, ¶¶ 95-101.

¶ 84                                        VIII. Prejudice

¶ 85        In our prior order, we found it "arguable" that defendant suffered prejudice, in light of the merits of the "underlying" claims in his petition. *Edgecombe*, 2013 IL App (1st) 120766-U, ¶ 104. However, now the standard is higher, and defendant must make a substantial showing.

¶ 86        To be precise, he must make a substantial showing that there is a reasonable probability that the appellate court would have found that the State could not show, beyond a reasonable doubt, that defendant could not show, by a preponderance of the evidence, his own actual and subjective, although unreasonable, belief in the need to use deadly force.

¶ 87        The above statement combines (1) the standard for the second stage of postconviction proceedings, (2) the standard for ineffective assistance of appellate counsel, (3) the harmless-error standard that applies since the error was not forfeited, and (4) the standard for second degree murder.

¶ 88        However, we will start with an analysis of whether, based on the evidence at trial, it was possible for defendant to establish, by a preponderance of the evidence, that he acted out of a subjective, actual belief in the need for deadly force or—as the trial court succinctly put it—if "this was just a drive-by shooting, bye, bye, second degree." In other words, if the evidence at trial was overwhelming that this was simply a drive-by shooting, then defendant cannot make a substantial showing of ineffective assistance of counsel.

¶ 89        Although we remanded to permit defendant and counsel an opportunity to amend and supplement the *pro se* petition, no further affidavits or documents were attached. Thus, our analysis of prejudice is limited to the existing trial record.

¶ 90        At trial, defendant testified that, when he arrived at 11th Street and Woodlawn Avenue, he pulled behind a van and observed Hatten emerge from the van, pull out a black semiautomatic handgun, and point it at defendant. Defendant ducked down, grabbed a rifle, and started firing as he drove away. Defendant testified that he did not observe where he was firing since he was crouched down. Defendant testified that he fired six or seven shots in fear of his life and that, after driving a short distance, he fired two or more shots in the air to disperse the crowd. Defendant denied telling police that he had observed Hatten reach inside his jogging suit but that Hatten had nothing his hands, and he denied telling his girlfriend, Harris, to roll down her window and lean back when they arrived at the scene.

¶ 91        Defendant was the only person to testify that Hatten pointed a firearm at defendant the night of the shooting. There was, and still is, no other witness who observed Hatten with a firearm. Other than his own obviously self-serving testimony, the evidence at trial established that defendant was the only one with a weapon at the time and place of the shooting.

¶ 92        Not only is there no other witness to another firearm, but Officer Foley testified that defendant actually told him that Hatten had nothing in his hands, and his girlfriend testified that he told her to roll down her window and lean back, apparently in preparation for the shooting that did follow. It is also undisputed that defendant arrived armed with a rifle.

¶ 93        Although defendant testified that he did not aim or point the firearm, that he fired his weapon up and to the right of the people standing on the north side of 11th Street, and that he discharged his firearm while ducking and looking down, the undisputed evidence is that three

24

of the shots he fired did, in fact, hit people. Jerome Anderson suffered a gunshot wound to his back and his left arm and died as a result. Walker suffered a gunshot wound to his throat.

¶ 94     Defendant argues that he had no motive to shoot Jerome Anderson, the murder victim, and that he considered Jerome a friend. On October 17, 2001, Reggie Anderson and others assaulted defendant, but it was Jerome Anderson who stepped in and stopped the fight. As a result, defendant had a swollen and bleeding lip but was not seriously injured. However, as this court previously found, defendant is "confusing motive with intent." *Edgecombe*, No. 1-06-2571, slip order at 23. "[T]he State has no obligation to prove motive in order to sustain a conviction of murder." *People v. Smith*, 141 Ill. 2d 40, 56 (1990).

¶ 95     Since there are no new affidavits, there are no credibility determinations for a trial court to make, which is the primary purpose of a third-stage evidentiary hearing. See *Sanders*, 2016 IL 118123, ¶ 42. We have already accepted as true defendant's previously filed documents showing that he was absent during the reading and response to the jury note. Weighing the evidence admitted at trial both for and against second degree murder, we find that the scale tips against it, overwhelmingly. Thus, we cannot find a substantial showing, and we must affirm the trial court's second-stage dismissal.

¶ 96     Affirmed.

**No. 1-17-1923**

| | |
|---|---|
| **Cite as:** | *People v. Edgecombe*, 2020 IL App (1st) 171923 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 01-CR-27398; the Hon. Allen F. Murphy, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Robert N. Markfield, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Joseph Alexander, Assistant State's Attorneys, of counsel), for the People. |