NOTICE

Decision filed 12/18/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220530-U

NO. 5-22-0530

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 15-CF-26 |
| | ) | |
| DREW PETERSON, | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not abuse its discretion in striking an unnotarized declaration attached to defendant's postconviction petition and dismissing his claim of actual innocence based on said declaration at the second stage of the proceedings. Postconviction counsel's failure to correct a procedural defect resulting in the dismissal of defendant's claim of actual innocence rebuts the presumption of reasonable assistance that counsel complied with the duties prescribed by Rule 651(c).

¶ 2   Following a jury trial, the defendant, Drew Peterson, was sentenced to 40 years' imprisonment for solicitation of murder for hire. He appeals from the partial second-stage dismissal and partial third-stage denial of his petition filed pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). The defendant contends that postconviction counsel did not provide reasonable assistance where counsel failed to correct an unverified declaration from an alleged witness which served as the basis for the circuit court's dismissal of his claim of

1

actual innocence. Alternatively, the defendant contends postconviction counsel's assistance was unreasonable because counsel did not amend his *pro se* petition to include an allegation explaining why he could not obtain a notarized affidavit from the alleged witness. For the following reasons, we reverse and remand.

¶ 3                                      I. Background

¶ 4      The defendant was charged with solicitation of murder (720 ILCS 5/8-1(b) (West 2016)) and solicitation of murder for hire (*id.* § 8-1.2(a)). The jury found the defendant guilty of both counts, and, after merging the two counts, the trial court sentenced him to 40 years' imprisonment for solicitation of murder for hire. This court affirmed the defendant's conviction on direct appeal. *People v. Peterson*, 2020 IL App (5th) 160541-U.

¶ 5      The defendant filed a *pro se* petition for postconviction relief which was advanced to the second stage, and the trial court appointed counsel to represent the defendant. The defendant's postconviction counsel did not amend the petition and filed a certification pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The trial court granted the State's motion to strike an unnotarized declaration attached to the defendant's *pro se* petition and to dismiss his claim of actual innocence. The remaining claims in the postconviction petition were advanced to a third-stage evidentiary hearing, following which, the trial court dismissed the defendant's postconviction petition.

¶ 6                            A. Underlying Incident and Trial

¶ 7    The following facts are adopted from our order on direct appeal. After the disappearance of the defendant's fourth wife, Will County State's Attorney James Glasgow reopened an investigation into the death of the defendant's third wife, which originally had been classified as

an accidental drowning. Ultimately, the defendant was convicted of murdering his third wife and sentenced to a term of imprisonment in the Illinois Department of Corrections (IDOC).

¶ 8    In early August 2014, Glasgow received a letter from an inmate at the Menard Correctional Center named Antonio Smith. Smith informed investigators that the defendant asked him to find someone to kill Glasgow in exchange for money. Smith volunteered to be a confidential informant and agreed to wear a recording device. The FBI directed the eavesdropping investigation in cooperation with IDOC officials.

¶ 9    In mid-November 2014, Smith began wearing the recording device. Smith previously had told the defendant that his uncle would commit the murder. On the recording, Smith told the defendant that his uncle was "ready." The defendant told Smith that he still needed Glasgow gone because it would get him out of prison. The investigation ran from November 13, 2014, through December 3, 2014, after which Smith was moved to another prison for his safety, and subsequently transferred to a federal prison.

¶ 10    On February 9, 2015, the defendant was charged with solicitation of murder and solicitation of murder for hire. At trial, Smith testified about his conversations with the defendant, and the recordings of some of those conversations were admitted into evidence. Smith told the jury the defendant asked him to find someone to kill Glasgow, and he believed the defendant was serious because he blamed Glasgow for putting him in prison. In exchange, the defendant promised that he would "take care" of Smith and his family. He offered $10,000 to whomever committed the murder.

¶ 11    The defendant called three witnesses at trial, all of which were inmates. Jesus Padilla was serving a sentence at the Menard prison and knew both the defendant and Smith. The trial court sustained an objection to a question about whether Smith had a reputation for honesty. Albert

3

Chavez was also serving a prison sentence at Menard. He knew both the defendant and Smith and testified that he stopped hanging out with the defendant because "they were running a scam," which he explained was something that inmates do to get what they want. Finally, Jacob Bohanon testified that he was Smith's codefendant. He testified that he had known Smith for a year or two before prison and while they were imprisoned at Menard and testified that Smith had a reputation for being untruthful and that he would lie most of the time.

¶ 12    In closing argument, defense counsel told the jury that Smith and the defendant were running a scam to get Smith out of Menard. Defense counsel claimed that their scam had worked because Smith had gotten what he wanted. Smith had been transferred to a federal correctional facility and was being treated like a king.

¶ 13    On May 31, 2016, the jury found the defendant guilty of both solicitation of murder for hire and solicitation of murder. The circuit court found that the second charge merged with the first and sentenced him to a prison term of 40 years on the solicitation of murder for hire conviction. The defendant timely filed a motion to reconsider the sentence, which was denied.

¶ 14                              B. Postconviction Petition

¶ 15    On October 18, 2021, the defendant filed a *pro se* postconviction petition asserting he did not receive effective assistance of trial counsel for a number of reasons and a claim of actual innocence. Regarding the actual innocence claim, the petition asserted that the defendant and Smith had run a scam to get Smith's sentence reduced; there was never an actual solicitation to murder Glasgow; and Glasgow was never in danger. The petition also asserted that the claim was supported by an unnotarized declaration purportedly signed by Smith. The declaration stated that Smith was looking for ways to reduce his sentence. The defendant wanted to help Smith so they came up with "The Scam," wherein Smith would make a report and try to convince the authorities

4

that the defendant was plotting to have Glasgow killed. Although the defendant was bitter about what happened to him, he never plotted to kill anyone. The scam was a falsehood to try to get Smith's sentence reduced. The defendant was innocent of the alleged plot to kill Glasgow, and Smith was willing to testify in court about the scam and the defendant's innocence.

¶ 16    The circuit court reviewed the *pro se* petition, found it was not frivolous or patently without merit, and appointed postconviction counsel for the defendant. Postconviction counsel did not file an amended postconviction petition, electing instead to adopt the defendant's *pro se* petition.

¶ 17    On July 1, 2022, postconviction counsel filed a motion to produce witness, requesting the circuit court to order the State to disclose Smith's location and to produce him for all evidentiary hearings. Counsel alleged that although Smith was being held in a federal correctional facility, the State possessed Smith or could gain access to his location. Counsel further alleged it was necessary to further the investigation of the defendant's claims that he be provided with Smith's location. Postconviction counsel also filed a petition for writ of *habeas corpus ad testificandum*, alleging that Smith was a material witness and requesting that Smith be produced to testify.

¶ 18    The same day, counsel filed an Illinois Supreme Court Rule 651(c) certificate (eff. Feb. 6, 2013). In the certificate, postconviction counsel attested that he had consulted with the defendant in person and by telephone to ascertain his contentions of depravation of his constitutional rights, examined the record of the proceedings at the trial, and made any amendments to the petition which were necessary for an adequate presentation of the defendant's contentions.

¶ 19    On July 14, 2022, the State filed a motion to strike Smith's purported declaration and dismiss the defendant's allegation of actual innocence based upon the alleged recanting of Smith's trial testimony. At a July 18, 2022, hearing, the State informed the circuit court that although all pending motions were set to be heard later that week, the State had recently filed the motion to

strike/dismiss. The State produced a file-stamped copy of the motion which had not yet made it into the court file. The State argued that the Smith declaration attached to the defendant's postconviction petition was a forgery. Consistent with its written motion, the State further argued that the declaration was not an affidavit because it was not notarized; thus, the declaration should be stricken, and the claim of actual innocence should be dismissed.

¶ 20     Postconviction counsel acknowledged that the declaration was not notarized. He informed the circuit court that two weeks prior to the hearing, he had filed a motion to produce Smith as a witness and a petition for writ of *habeas corpus ad testificandum*, seeking to discover Smith's location. Counsel explained his efforts to locate Smith, including searching the federal system of corrections database which revealed there were a number of "Antonio Smiths" located throughout the country. Counsel stated that he believed the circuit court had the power to order the State to produce Smith to allow counsel an opportunity to investigate the matter. Although the circuit court informed postconviction counsel that it previously was unaware that he had any issues contacting Smith, or that counsel had filed the aforementioned motions, it reminded counsel that the postconviction petition was at the second stage which required Smith's declaration to be notarized. In its written order, the circuit court found that Smith's declaration was not an affidavit and that the lack of an affidavit attached to the defendant's petition was a procedural defect. Accordingly, the circuit court granted the State's motion to strike the declaration and dismissed the claim of actual innocence based on the declaration. However, the circuit court allowed the defendant's remaining claim of ineffective assistance of trial counsel to advance to a third-stage evidentiary hearing.

6

¶ 21    On July 22, 2022, the hearing on the defendant's postconviction petition was held. The defendant's trial counsel was the only witness called to testify. The circuit court dismissed the defendant's petition for postconviction relief. The defendant filed this timely appeal.

¶ 22                                    II. Analysis

¶ 23    The defendant contends that the circuit court abused its discretion when it failed to grant the defendant's request for limited discovery into Antonio Smith's location in the Federal Bureau of Prisons so that he could attempt to cure Smith's defective "affidavit." The defendant further contends that the trial court erred in dismissing the defendant's claim of actual innocence. The defendant argues that postconviction counsel did not adequately represent him pursuant to Rule 651(c).

¶ 24                        A. The Post-Conviction Hearing Act

¶ 25    The Illinois Constitution affords a postconviction petitioner the right to assert a claim of actual innocence based on newly discovered evidence. *People v. Ortiz*, 235 Ill. 2d 319, 331 (2009). The evidence must be newly discovered, material and not merely cumulative, and must be of such conclusive character that it would probably change the result on retrial. *Id.* at 333.

¶ 26    The Post-Conviction Hearing Act (Act) provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the criminal proceedings took place. 725 ILCS 5/122-1(b) (West 2020). The postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. *Id.* § 122-2.

¶ 27 "The Act provides a three-stage mechanism for a defendant to advance such a claim." *People v. Addison*, 2023 IL 127119, ¶ 18. "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2020). Thereafter, if the petition is not summarily dismissed, it must be set for further consideration in the second stage. 725 ILCS 5/122-2.1(b) (West 2020); *Addison*, 2023 IL 127119, ¶ 18.

¶ 28 "The second stage of postconviction review tests the legal sufficiency of the petition." (Internal quotation marks omitted.) *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12. At this stage, the petitioner's allegations are taken as true, unless affirmatively refuted by the record; then, the question becomes whether the allegations establish a constitutional violation. *Id.* At the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation. *Id.* "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009). "The purpose of the first two stages is to determine whether an evidentiary hearing is even necessary." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 42. Although partial summary dismissals are not permissible during first-stage postconviction proceedings (*People v. Rivera*, 198 Ill. 2d 364, 374 (2001)), it is permissible for a circuit court to partially dismiss a postconviction petition at the second stage and advance only certain claims for a third-stage evidentiary hearing. *People v. Lara*, 317 Ill. App. 3d 905, 908 (2000).

¶ 29 At the third-stage evidentiary hearing, the circuit court "may receive proof by affidavits, depositions, oral testimony, or other evidence." 725 ILCS 5/122-6 (West 2020). At this stage, a defendant must prove by a preponderance of the evidence that he suffered a substantial denial of

a constitutional right. *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006). Fact-finding and credibility determinations are made at the third-stage evidentiary hearing. *Id.* at 473.

¶ 30    Although on appeal the defendant characterizes his motions as a request for limited discovery, review of the record reveals they were not. Instead, the defendant's petition for writ of *habeas corpus ad testificandum* and motion to produce witness requested that Smith be produced to testify, which was not appropriate for this stage of the postconviction proceedings (at the second stage, a circuit court considers only proofs attached by defendant to his petition and the original trial record (*People v. Edgecombe*, 2020 IL App (1st) 171923, ¶ 56 (citing *People v. Sanders*, 2016 IL 118123, ¶¶ 45, 48))).

¶ 31    Although not provided for in the Act, the Illinois Supreme Court has held that a circuit court has inherent discretionary authority to order discovery in a postconviction proceeding. *People v. Williams*, 209 Ill. 2d 227, 236 (2004). Due to the potential for abuse of the discovery process, and because of the limited scope of postconviction proceedings, the circuit court's authority must be exercised with caution. *Id.* "Thus, discovery should be allowed only after the moving party demonstrates good cause for the request." *Id.* Good cause must be evaluated in light of the claims raised in the petition, the scope of the requested discovery, the time between the conviction and the postconviction proceeding, the burden of discovery on the State and any witnesses, and the availability of the evidence from other sources. *People v. Pinkston*, 2013 IL App (4th) 111147, ¶ 13 (citing *People v. Johnson*, 205 Ill. 2d 381, 408 (2002)). A circuit court's denial of a postconviction discovery request will be reversed only if the trial court abused its discretion. *Id.* Based upon the facts before us, we find the circuit court did not abuse its discretion as postconviction counsel failed to sufficiently designate his motions as a request for limited

9

discovery. We further find that the circuit court did not err in striking Smith's unnotarized declaration and dismissing the defendant's claim of actual innocence.

¶ 32                    B. Whether Defendant Received Reasonable Assistance

¶ 33    The defendant maintains that he did not receive reasonable assistance from postconviction counsel where counsel failed to correct the defective Smith "affidavit" or explain in the petition why he could not obtain a notarized affidavit from Smith.

¶ 34    Pursuant to Rule 651(c), "[p]ostconviction counsel must consult with the defendant to ascertain his contentions of deprivation of constitutional rights, examine the record of the proceedings and the trial, and make any amendments to the *pro se* petition that are necessary to adequately present the defendant's contentions." *People v. Urzua*, 2023 IL 127789, ¶ 33. If in the course of fulfilling the 651(c) requirements, postconviction counsel discovers something in the *pro se* petition that would ethically prevent him from presenting the petitioner's claims, counsel may move to withdraw and explain why each of the petitioner's *pro se* claims lacks merit. *Id.* The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. The petitioner may overcome this burden by showing that postconviction counsel failed to substantially comply with Rule 651(c). *Id.*

¶ 35    The Act provides that a "petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020). "An affidavit consists of a 'statement sworn to before a person who has authority under the law to administer oaths.' " *People v. Allen*, 2015 IL 113135, ¶ 31 (quoting *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494 (2002)). The Illinois Notary Public Act (5 ILCS 312/1-101 *et seq.* (West 2020)) provides that "[a] notarial act must be evidenced by a certificate

10

signed and dated by the notary public. The certificate must include identification of the jurisdiction in which the notarial act is performed and the official seal of office." *Id.* § 6-103(a). At the second stage of postconviction proceedings, "appointed counsel owes a duty to remedy procedural defects." *People v. Turner*, 2012 IL App (2d) 100819, ¶ 41.

¶ 36 "Where a defendant has submitted an unnotarized statement, the State may challenge this nonjurisdictional procedural defect at the second stage of proceedings." *Allen*, 2015 IL 113135, ¶ 35. When a defendant does not cure a defective affidavit at the second stage, the court may dismiss the petition upon the State's motion. *Id.*; see also *Urzua*, 2023 IL 127789, ¶ 61 (claim of actual innocence supported only by an unnotarized statement, even one signed under penalty of perjury, was insufficient to survive a second-stage motion to dismiss).

¶ 37 Here, by adopting the defendant's *pro se* petition, postconviction counsel implicitly acknowledged that the claims potentially had merit. Thus, counsel had a duty to attach a notarized affidavit to the petition *or* state why the notarized affidavit was not attached. 725 ILCS 5/122-2 (West 2020). Instead of electing to adopt the defendant's *pro se* petition, postconviction counsel could have filed an amended petition stating why the notarized affidavit was not attached. He then could have filed a sufficiently designated motion for limited discovery seeking Smith's location in the federal correctional facility. We express no opinion on the question of whether the defendant could demonstrate good cause to support his request for discovery or whether the circuit court would have granted such a motion. However, postconviction counsel's failure to remedy the procedural defect at the second stage of proceedings resulted in the circuit court's dismissal of the defendant's actual innocence claim. Accordingly, we find that the defendant has met his burden to overcome the presumption of reasonable assistance by establishing that postconviction counsel did not comply with the mandatory Rule 651(c) duties.

11

¶ 38    Illinois courts consistently have held that remand is required where postconviction counsel failed to fulfill the duties set forth in Rule 651(c) regardless of whether the claims raised in the petition had merit. *Addison*, 2023 IL 127119, ¶ 33 (citing *People v. Suarez*, 224 Ill. 2d 37, 47 (2007)). We conclude that this cause should be remanded to the circuit court. On remand, new postconviction counsel should be given the opportunity to file an amended petition and shall ensure that the amended petition has "attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020).

¶ 39                            III. Conclusion

¶ 40    The judgment of the circuit court is affirmed in part and reversed in part. The cause is remanded so that postconviction counsel may file an amended postconviction petition which adequately presents the defendant's claims.

¶ 41    Affirmed in part and reversed in part; cause remanded with directions.